T.C. Memo. 2005-245

UNITED STATES TAX COURT

DAVIS AND LOIS ETKIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 7627-02L, 17722-03L.    Filed October 20, 2005.

Davis and Lois Etkin, pro se.

<u>Michelle L. Maniscalco</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  These consolidated cases concern:  (1) A
notice of determination concerning collection action (notice of
determination) upholding liens under section 6320 for
petitioners' taxable years 1997 through 1999; (2) a notice of
determination upholding a levy under section 6330 for
petitioners' taxable year 1999; (3) a notice of determination

upholding a lien for petitioners' taxable year 2000. The issues for decision are:

(1) Did respondent abuse his discretion in upholding the liens under section 6320 in the notices of determination for petitioners' taxable years 1997, 1998, 1999, and 2000? We hold that respondent did not abuse his discretion.

(2) Did respondent abuse his discretion in upholding the proposed levy under section 6330 in the notice of determination for petitioners' taxable year 1999? We hold that respondent did not abuse his discretion.

(3) Did respondent abuse his discretion in denying petitioner Lois Etkin equitable relief under section 6015(f) for the taxable years 1997, 1998, 1999, and 2000? We hold that respondent did not abuse his discretion.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners Davis Etkin and Lois Etkin have been married and resided together at all times in Schenectady, New York, since 1990. Davis Etkin is the former president of Off-Track Betting Organization. Lois Etkin is a retired school teacher with a master's degree in education. Petitioners filed joint income tax returns for 1997, 1998, 1999, and 2000. They reported tax liabilities due, but these

liabilities were not fully paid either by withholdings or by any payment submitted with the returns. The balance owed in each return is allocable to the income of both petitioners. Respondent has not determined a deficiency against either petitioner for the taxable years at issue. Petitioners' joint income tax returns for the taxable years 1997 through 2000 showed the following unpaid balances:

| Taxable Year | Unpaid Balance |
|---|---|
| 1997 | $18,504 |
| 1998 | 28,448 |
| 1999 | 12,421 |
| 2000 | 14,359 |

Respondent assessed the following additions to tax under sections 6654(a) and 6651(a)(2) in connection with the unpaid balances:

| | Additions to Tax | |
|---|---|---|
| Taxable Year | Sec. 6651(a)(2) | Sec. 6654(a) |
| 1997 | $712.12 | $701.00 |
| 1998 | 1,093.80 | 1,103.00 |
| 1999 | 248.42 | 525.22 |
| 2000 | 646.15 | 675.54 |

Further, respondent assessed a $1,292.31 addition to tax for failure to file a timely return for the taxable year 2000 under section 6651(a)(1).[1]

---

[1]Petitioners received an extension of time to file their joint income tax return for the tax year 2000 until Oct. 15, 2001; however, they did not file it until Nov. 23, 2001.

A. Notices of Determination for the Taxable Years 1997, 1998, and 1999

    1. Final Notices of Intent To Levy

On June 26 and May 16, 2000, respectively, respondent issued to petitioners Forms 1058, Final Notices of Intent to Levy and Notice of Your Right to a Hearing, as required by section 6330(a), with respect to unpaid liabilities for the taxable years 1997 and 1998. On September 28, 2000, respondent issued to petitioners Form 1058 for the taxable year 1999.

On October 12, 2000, petitioners submitted Form 12153, Request for a Collection Due Process Hearing, in response to the May, June, and September final notices of intent to levy, requesting a hearing for the taxable years 1997-99. Petitioners' Form 12153 was timely submitted in response to the September 2000 notice of intent to levy for the taxable year 1999. However, petitioners' request for a hearing under section 6330 for the taxable years 1997 and 1998 was untimely submitted. Accordingly, respondent provided an "equivalent" hearing under section 301.6330-1(i), Proced. & Admin. Regs., as to the proposed levy for the taxable years 1997 and 1998. In addition, petitioners filed Form 2848, Power of Attorney and Declaration of Representative, conferring on their C.P.A., Robert Kristel, the authority to represent petitioners at their hearing for the taxable years 1997-99.

2.   Notice of Federal Tax Lien

On October 4, 2000, respondent issued a notice of Federal tax lien, as required by section 6320(a), for petitioners' 1997-99 tax years.  On October 12, 2000, petitioners timely submitted Form 12153 requesting a hearing under section 6320 for taxable years 1997-99.

3.   Lois Etkin's Request for Innocent Spouse Relief

On December 14, 2000, respondent received from Lois Etkin Form 8857, Request for Innocent Spouse Relief, for her taxable years 1997-99.  On her Form 8857, Lois Etkin claimed that it would be inequitable to hold her liable for petitioners' joint income taxes because (1) she relied on Davis Etkin to prepare the income tax returns and pay the taxes, and (2) she believed that her withholding was sufficient to pay her income taxes for the aforementioned taxable years.  In addition, Lois Etkin submitted to respondent a completed Questionnaire for Requesting Spouse during the course of the hearing for the taxable years 1997-99.

4.   The Appeals Officer's Consideration of Petitioners' Proposed Installment Agreements During Their Hearing for the Taxable Years 1997-99

In January 2000, before any notices of liens or proposed levies were issued, petitioners proposed to the revenue agent handling their case an installment agreement to satisfy their joint income tax liabilities for the taxable years 1997-99.  The installment agreement required payments of $800 a month over 5

years.  Petitioners made payments from November 2000 until September 2003.  On December 6, 2000, the revenue agent rejected petitioners' proposed January 2000 installment agreement and referred the case to the Appeals Office to fulfill petitioners' request for a hearing.  In their Form 12153, petitioners again requested an installment agreement and claimed that the monthly payments previously determined by the revenue agent exceeded their ability to pay.

The Appeals officer engaged in a series of phone calls and letters with petitioners' representative concluding sometime in November 2001.  On July 12, 2001, the Appeals officer mailed to petitioners a letter offering them the opportunity to have a face-to-face conference on July 25, 2001, for the taxable years 1997-99.  At petitioners' representative's request, the Appeals officer rescheduled the conference for September 12, 2001, at the Appeals Office.  Neither petitioners nor their representative appeared for the September 12, 2001, conference.  On November 9, 2001, respondent mailed to petitioners a followup letter giving them 2 weeks to raise any additional issues regarding the lien or intent to levy.  Petitioners' representative then contacted the Appeals officer and, on behalf of petitioners, proposed an installment agreement requiring monthly payments of $800 over 5 years to pay their outstanding tax liability of $55,362.13, which terms were the same terms the revenue agent in charge of

petitioners' case had previously rejected.  The only financial information available to the Appeals officer in the administrative record was a Form 433-A, Collection Information Statement (the financial statement), that petitioners submitted in October 2000 to the revenue agent reviewing their case.  This statement reflected total monthly income of $15,630.77 and total monthly expenses of $16,816.01.  On the basis of the information provided in the financial statement and the procedures of the Internal Revenue Manual (IRM), the revenue agent disallowed certain expenses and determined that petitioners could afford to pay $4,912 per month for the first year and $7,106 per month thereafter.  By the time the Appeals Office reviewed petitioners' case, the financial statement was more than 12 months old and thus outdated.  Given the age of the financial statement, the information on petitioners' 2000 income tax return, and the Appeals officer's conversations with petitioners' representative, the Appeals officer determined that the financial statement did not reflect their current financial status.  The Appeals officer informed petitioners' representative that he did not have sufficient financial information to make a determination as to their installment agreement proposal and requested updated financial information.  Petitioners' representative informed the Appeals officer that he could not rely on the financial statement

in the administrative record because petitioners' financial circumstances had changed.

Petitioners' representative agreed to provide the Appeals officer with updated financial statements from petitioners by December 31, 2001, but never did so. The lack of an updated financial statement compelled the Appeals officer to use the financial statement and the information on petitioners' taxable year 2000 income tax return to determine petitioners' eligibility for the proposed installment agreement. The Appeals officer determined that certain expenses petitioners claimed on the financial statement were not allowable under the provisions of the IRM. Therefore, the Appeals officer could not take those expenses into account in determining how much petitioners were able to pay.

5.  Notices of Determination and Decision Letter Issued for the Taxable Years 1997-99

On March 21, 2002, respondent issued a final notice of determination upholding the Federal tax lien for the taxable years 1997-99. Respondent also issued a notice of determination upholding the Federal tax levy for the taxable year 1999. Further, respondent issued a decision letter concerning the equivalent hearing under section 6330 for the taxable years 1997 and 1998 in which respondent upheld the proposed levy actions. At the time the notices were issued, petitioners' outstanding income tax liability was $55,362.13. In analyzing petitioners'

claims, the Appeals officer denied petitioners' offer of an installment agreement and determined that: (1) Pursuant to their proposed installment agreement, only $48,000 would have been paid towards their total outstanding liability of $55,362.13; (2) petitioners were delinquent in paying their joint income tax liability for the taxable year 2000 and had not made any estimated tax payments for the taxable year 2001; and (3) the revenue agent was correct in his determination that petitioners' proposed installment agreement was unacceptable because they could afford to pay $4,912 per month in the first year and $7,106 per month in the years thereafter.

In addition, in a Form 866-A, Explanation of Items, the Appeals Office denied petitioner Lois Etkin's claim for equitable relief under section 6015(f) for the taxable years 1997-99. In analyzing Lois Etkin's entitlement to equitable relief under section 6015(f), the Appeals officer relied on the following factors: (1) Lois Etkin was married to and still residing with Davis Etkin; (2) Davis Etkin did not abuse Lois Etkin; (3) Lois Etkin failed to establish that she would suffer economic hardship if relief was not granted; (4) Lois Etkin derived a significant benefit from not paying the tax liabilities; (5) some of the tax due in each year at issue was attributable to Lois Etkin's income; (6) there were perceptible asset transfers between petitioners; and (7) Lois Etkin was well educated and knew or had

reason to know that the tax liabilities would not be paid and were not solely attributable to Davis Etkin.  Further, petitioners did not offer any evidence to rebut the Appeals officer's determination.

B.  The Taxable Year 2000 Hearing

1.  Notice of Federal Tax Lien

On April 5, 2002, respondent filed a notice of Federal tax lien in the County of Schenectady, New York, for the taxable year 2000.  On April 11, 2002, respondent issued to petitioners the notice of Federal tax lien filing and a Form 1058.  On May 3, 2002, petitioners timely submitted a Form 12153 requesting a hearing under section 6320.  On their Form 12153, petitioners claimed (as they had in the Form 12153 for the 1997-99 tax years) that respondent requested monthly payments that greatly exceeded their ability to pay and requested an installment agreement. Along with petitioners' Form 12153, Lois Etkin submitted a Form 8857, requesting innocent spouse relief, claiming that she believed her withholding was sufficient to pay her income taxes, and that her husband had assumed responsibility for the filing of their income tax return and payment of their joint tax liability for the taxable year 2000.  Although petitioners incurred an additional income tax liability for the taxable year 2000 of $17,759.51, petitioners made payments towards their outstanding joint income tax liabilities for the taxable years 1997 and 2000,

which reduced their total outstanding income tax liability from $55,362.13 on March 21, 2002, to $45,776.13 on September 16, 2003.

The factors petitioner Lois Etkin set forth for entitlement to section 6015(f) equitable relief for the taxable year 2000 are virtually identical to the factors set forth in her claim for equitable relief associated with the taxable years 1997-99.

2.   Hearing

During a phone call to the Appeals officer on August 13, 2003, petitioners proposed an installment agreement to satisfy their outstanding joint liabilities for the taxable years 1997 through 2000.  The proposed agreement provided that petitioners would pay $762.94 per month, which would have fully satisfied their outstanding income tax liability of $45,776.13 within 5 years.  On July 21, 2003, the Appeals Office issued a letter to petitioners informing them that Lois Etkin was not entitled to equitable relief under section 6015(f) and inviting petitioners to raise any additional issues regarding their hearing. Petitioners did not have legal representation during the hearing for the taxable year 2000.  After a phone call with the Appeals officer in response to the Appeals Office's July 21, 2003, letter, petitioners agreed to raise any additional issues by mail within 10 days, but failed to do so.  The Appeals officer followed the administrative procedures which require requesting a

new or updated financial statement if the financial information is more than 12 months old and/or the information is no longer accurate. Despite his requests, petitioners did not provide updated financial information. Because of petitioners' failure to provide updated financial information, and the fact that the only financial information in the administrative record remained the financial statement, the Appeals officer considered the financial information from the hearing for the taxable years 1997-99.

3. Notice of Determination for the Taxable Year 2000

On September 16, 2003, respondent issued a notice of determination upholding the proposed lien under section 6320 for the taxable year 2000. On the same date, respondent also issued a notice of determination denying Lois Etkin equitable relief under section 6015(f). The Appeals officer concluded that even though petitioners proposed to fully pay their outstanding income tax liabilities over 5 years, they did not qualify for the 5-year rule as set forth by IRM sec. 5.15.1.3(4) (2000)[2] because (1) they did not provide the Appeals officer with an updated financial

---

[2] Internal Revenue Manual (IRM), sec. 5.15.1.3(4) (2000) provides for a "five-year" rule that excessive necessary and conditional expenses may be allowed if the tax liability, including projected accruals, will be fully paid within 5 years. "Excessive necessary" and "conditional expenses" are expenses that do not meet the test for "necessary expenses", which must provide for a taxpayer and his family's health and welfare and/or the production of income. See IRM sec. 5.15.1.3(2) (2000).

statement from which the Appeals officer could determine petitioners' income and allowable expenses, and (2) they failed to provide substantiation for their expenses as required by the IRM.

As to Lois Etkin's claim for equitable relief under section 6015(f), respondent considered the following factors dispositive of the issue: (1) Lois Etkin signed a joint income tax return with her husband for the taxable year 2000, while the hearing was taking place for the taxable years 1997-99; and (2) she was well educated. On the basis of these two factors, respondent determined that Lois Etkin had reason to know when she signed the 2000 income tax return that the tax liability would not be paid. As a result of this determination and Lois Etkin's failure to meet some of the requirements set forth in Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. 447, 448, respondent denied Lois Etkin's claim for relief under section 6015(f).

### OPINION

Sections 6320 and 6330 provide for Tax Court review of the Commissioner's administrative determinations to proceed with liens and levies. Where the validity of the underlying tax liability is at issue, the Court will review the matter de novo. Davis v. Commissioner, 115 T.C. 35, 39 (2000). However, petitioners have not challenged the validity of the underlying tax liability. Because the underlying tax liability and section

6015(b) and (c) is not at issue, the Court will review respondent's administrative determinations for abuse of discretion; that is, whether the determinations were arbitrary, capricious, or without sound basis in fact or law. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Woodral v. Commissioner, 112 T.C. 19, 23 (1999). We note that we do not have jurisdiction under section 6330(d) to review petitioners' claims contesting the proposed levy actions for the taxable years 1997 and 1998. Section 301.6330-1(b), Proced. & Admin. Regs., provides that the taxpayer must request the section 6330 hearing within the 30-day period commencing on the day after the date of the notice of intent to levy. Failure to do so results in the taxpayer's being allowed only an "equivalent hearing". Section 301.6330-1(i)(2), Q&A-15, Proced. & Admin. Regs., generally provides that a taxpayer may not obtain court review of the decision following an equivalent hearing. Petitioners did not file their Forms 12153 within the 30-day period following the 1997 and 1998 notices of intent to levy. Therefore, we lack jurisdiction to review respondent's decision to uphold the levy actions for the taxable years 1997 and 1998.

Notwithstanding our lack of jurisdiction to review the upheld levy actions under section 6330 for the taxable years 1997 and 1998, we have statutory jurisdiction to consider petitioners' challenge to the liens under section 6320, as well as Lois

Etkin's claim for equitable relief under section 6015(f) for each of the taxable years at issue, including 1997 and 1998. Section 6320(c) incorporates section 6330(c), (d), and (e) by reference (with the exception of section 6330(d)(2)(B)). Section 6330(c)(2)(A) gives the taxpayer the right to raise any relevant spousal defenses in connection with the hearing. Section 6330(d) is the specific provision that governs our jurisdiction to review a proposed collection action. Therefore, this Court has jurisdiction over petitioners' sections 6320 and 6015(f) claims for each of the taxable years at issue.[3]

I. Respondent Did Not Abuse His Discretion Rejecting Petitioners' Proposed Installment Agreements, and Upholding the Proposed Actions to Collect Petitioners' Joint Income Tax Liabilities for the Taxable Years 1997, 1998, 1999, and 2000

A. Background on Proposed Installment Agreements

Section 6159 authorizes the Commissioner to enter into installment agreements with taxpayers to satisfy their tax liabilities if the Commissioner determines that such agreements will facilitate the collection of the liability. The IRM, together with sections 301.6159-1, 301.6320-1, and 301.6330-1, Proced. & Admin. Regs., establishes the IRS procedures for

---

[3]Lois Etkin received a notice of determination in response to her request for relief under sec. 6015 and was notified that she could petition a stand-alone sec. 6015 case under sec. 6015(e). See sec. 301.6330-1(i)(2), Q&A-15, Proced. & Admin. Regs. Lois Etkin did not file such a petition. Nevertheless, we have jurisdiction over the sec. 6015(f) claims for each taxable year at issue pursuant to sec. 6320(c).

determining whether an installment agreement will facilitate collection of the liability. This Court has previously upheld the Commissioner's determinations based in part on the provisions of the IRM. See, e.g., Orum v. Commissioner, 123 T.C. 1, 13 (2004) (upholding the Commissioner's determination because of the taxpayers' failure to timely provide requested information regarding their current financial condition in accordance with IRM guidelines), affd. 412 F.3d 819 (7th Cir. 2005); McCorkle v. Commissioner, T.C. Memo. 2003-34 (the taxpayer was not current in her filing and paying obligations, and therefore the Commissioner under the IRM guidelines rejected her proposed installment agreement); Schulman v. Commissioner, T.C. Memo. 2002-129 (upholding settlement officer's proposed monthly installment agreements computed under IRM guidelines).

When determining whether a taxpayer's proposed installment agreement will facilitate collection of the liability under section 6159, the Internal Revenue Service makes a financial analysis of the taxpayer's monthly income and expenses and the taxpayer's ability to pay. See Schulman v. Commissioner, supra. We have previously held that consideration of a taxpayer's ability to pay is reasonable in the Commissioner's determination of whether a proposed installment agreement is acceptable. See id. In determining the amount taxpayers are able to pay, the IRS allows taxpayers to claim certain expenses to offset their income.

Those procedures contain guidelines for allowable expenses, which include necessary and conditional expenses. See id. (citing IRM (CCH), sec. 5.15.1 to 5.15.1.4, at 17,653-17,660). "Necessary" expenses are those that provide for a taxpayer's health and welfare and/or the production of income. See IRM sec. 5.15.1.3(2) (2000). Under IRM sec. 5.15.1.3(4) (2000), the Appeals officer is permitted to allow "excessive necessary" and "conditional" expenses when examining a taxpayer's financial statement, provided that the tax liability, including all accruals, will be paid within 5 years. "Conditional" expenses are any expenses other than "necessary" expenses. See IRM secs. 5.15.1.7(6) (2004) and 5.15.1.3(3) (2000). Further, all expenses must be substantiated in order to be allowable. See Schulman v. Commissioner, supra (sustaining the Appeals officer's disallowance of unsubstantiated expenses).

Sections 301.6320-1(e) and 301.6330-1(e), Proced. & Admin. Regs., provide that the taxpayers are obligated to provide all requested information, including financial statements, throughout the course of the hearing. In addition, IRM sec. 5.15.1.1(8) (2004) states that financial statements submitted by taxpayers in the course of a hearing should be updated if they are older than 12 months. This Court has previously upheld the Commissioner's determination that a proposed installment agreement was unacceptable on account of the taxpayer's failure to provide

updated financial statements.  See Orum v. Commissioner, supra at 13.

   B.   Respondent Did Not Abuse His Discretion Upholding the Proposed Collection Actions and Rejecting Petitioners' Proposed Installment Agreement During the Hearing for the 1997-99 Taxable Years

Petitioners argue that respondent abused his discretion in rejecting the terms of their proposed installment agreement for the taxable years 1997-99 of $800 per month over 5 years and sustaining the proposed collection actions.  Petitioners' main reasons are that (1) the Appeals officer arbitrarily set an amount that was suitable for petitioners to pay monthly, and (2) the Appeals officer did not fully take into account the financial and health conditions of petitioners.  We disagree.

The primary flaw in petitioners' argument is that petitioners failed to provide more updated financial information despite the Appeals officer's repeated requests.[4]  The Appeals officer properly followed the administrative procedures requiring him to request a new or updated financial statement if the financial

_____

[4]Petitioners allege that there is an updated 2002 financial statement on file with the Appeals office.  Respondent is not aware of the existence of such a document.  Although this Court's review is not limited to the evidence in the administrative record, Robinette v. Commissioner, 123 T.C. 85 (2004), petitioners did not introduce such evidence at any juncture, including at trial.  We merely have petitioners' assertion that it exists.  Therefore, because of the lack of substantive documentation of this alleged financial statement and petitioners' failure to introduce it into evidence for this Court to consider, we are unable to acknowledge its existence.

information in the administrative file is more than 12 months old and/or the information is no longer accurate. After petitioners failed to appear for their September 12, 2001, face-to-face hearing, the Appeals officer informed petitioners through their representative that he did not have sufficient financial information to make a determination on their installment agreement proposal. Then the Appeals officer invited petitioners to submit additional information to assist in his consideration of their proposed installment agreement, but petitioners never sent him any information. Despite the Appeals officer's multiple requests to either petitioners or their representative, petitioners did not submit updated financial information. As a result, we find that the Appeals officer could have reasonably rejected an installment agreement proposal by petitioners on account of their failure to timely provide the requested information. See Orum v. Commissioner, supra.

Given petitioners' failure to provide the requested updated financial statement, respondent considered the financial statement in determining whether to accept petitioners' proposed installment agreement. If petitioners had paid $800 a month for 5 years pursuant to their proposed installment agreement, only $48,000 would have been paid towards their total outstanding liability of $55,362.13. Since they did not offer an alternative installment proposal, the revenue agent calculated a reasonable payment

expectation, applying the reasonable expense criteria[5] of the IRM to reach a payment plan that would reflect their actual ability to pay off the tax liability timely.  Petitioners argue that respondent abused his discretion in determining that their proposed installment agreement did not reflect their ability to pay and thus upholding the revenue agent's determination, based on the financial statement, that petitioners could afford to pay $4,912 per month for the first year, and $7,106 per month thereafter.  Petitioners further argue that the record does not reflect the reasoning behind the revenue agent's calculation of what they can afford to pay and suggest it may be a subjective opinion.  Petitioners also suggest that the Appeals Office simply took the actions of the revenue agent at face value without coming to an independent determination of what was an acceptable payment plan.

We conclude that respondent did not abuse his discretion in determining that petitioners' proposed installment agreement did not reflect their ability to pay.  We also conclude that respondent did not base his determination of petitioners' proposed installment agreement on a subjective formula.  The revenue agent computed the monthly installment payment under the guidelines of

---

[5]Pursuant to the criteria in the IRM, the Appeals officer determined that a number of the expenses petitioners claimed on their financial statements were not allowable.  See IRM sec. 5.15.1.3 (2000).

the IRM.  This Court has previously found determinations following from computations under the IRM to be a proper exercise of the Commissioner's discretion.  See Schulman v. Commissioner, T.C. Memo. 2002-129.  The revenue agent applied these procedures and disallowed certain expenses.  The Appeals officer acknowledged at trial that he was not bound by the revenue agent's determination.  However, the Appeals officer properly reviewed the revenue agent's computations, which were based upon the financial statement, and found them to be correct.  Therefore, those computations were not based on any arbitrary determination, and petitioners' argument is without merit.

Petitioners set forth a litany of factors that they argue the Appeals officer did not take into account in assessing their ability to pay, such as Davis Etkin's age, heart condition, gall bladder removal, and other health-related problems.  In addition, petitioners cite the termination of Davis Etkin by his employer and the denial of benefits, along with $200,000 in fines and restitution payments that Davis Etkin was required to make in connection with his sentence for defrauding the Government and bribery.  Petitioners' argument is without merit because petitioners failed to submit an updated financial statement that reflected these alleged changes in their financial situation.  See Orum v. Commissioner, 123 T.C. 1 (2004).

In addition, the Appeals officer exercised proper discretion in rejecting petitioners' proposed installment agreement because petitioners were not in full compliance with their filing and payment obligations. See Orum v. Commissioner, 412 F.3d at 820; McCorkle v. Commissioner, T.C. Memo. 2003-34 (citing IRM pt. 5.14.1.4.1 (July 1, 2002), pt. 5.14.9.3(5) (Mar. 30, 2002), pt. 5.19.1.3.3.1(1) and (5) (Oct. 1, 2001), pt. 5.19.1.5.4.10(1)-(2) (Oct. 1, 2001)). Petitioners were delinquent in paying their joint income tax liability for the taxable year 2000 and had not made any estimated tax payments for the taxable year 2001. Therefore, respondent did not abuse his discretion in denying petitioners' proposed installment agreement.

C. Respondent Did Not Abuse His Discretion Upholding the Proposed Collection Actions and Rejecting Petitioners' Proposed Installment Agreement During the Collection Due Process Hearing for the 2000 Taxable Year

During petitioners' hearing for the taxable year 2000, they proposed an installment agreement whereby they would fully pay their outstanding tax liabilities in equal monthly installments over 5 years. Petitioners contend that respondent abused his discretion by rejecting their proposed installment agreement.

Petitioners' position is without merit because of their repeated failure to provide respondent with updated financial statements. See Orum v. Commissioner, 123 T.C. at 13. During the course of the communications associated with the hearing for the

taxable year 2000, the Appeals officer requested updated financial statements in order to consider petitioners' proposed installment agreement. By this time, the financial statement was over 3 years old. Petitioners had previously acknowledged in connection with their hearing for the taxable years 1997-99 that their circumstances had changed from the facts shown in the financial statement, and that the Appeals officer could no longer rely on the financial statement. Clearly, respondent could not make an objective determination of the viability of petitioners' proposed installment agreements on the basis of such outdated information. Respondent, therefore, did not abuse his discretion in denying petitioners' proposed installment agreement on the basis of their failure to comply with his request for updated financial information. See id.

Petitioners have also contended that respondent abused his discretion in refusing to consider "excessive necessary" and "conditional" expenses. Under IRM sec. 5.15.1.3(4) (2000), the "five-year" rule states that the Appeals officer may consider any "excessive necessary" or "conditional" expenses if the taxpayers can show that they can fully pay their outstanding income tax liabilities over 5 years. Respondent argues that he was unable to consider any "conditional" or "excessive necessary" expenses because petitioners did not provide an updated financial statement

or substantiate any of the expenses that they claimed on the statement available to respondent.  We agree with respondent.

Sections 301.6320-1(e)(1) and 301.6330-1(e)(1), Proced. & Admin. Regs., require that "Taxpayers will be expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing."  (Emphasis added.)  IRM sec. 5.15.1.1(8) (2004) requires financial statements reviewed for purposes of determining the viability of proposed installment agreements to be no more than 12 months old.  As we have repeatedly observed, petitioners did not meet this requirement.  The Appeals officer properly requested a new or updated financial statement, but petitioners did not comply with that request.  Respondent, thus, did not have any basis other than the previous evaluation on which to consider petitioners' proposed installment agreement.  In the previous evaluation of the financial statement, the revenue agent disallowed many of petitioners' claimed expenses because they did not conform with the expenses allowable under the provisions of the IRM.  Had respondent relied upon the financial statement, he would have reached the same conclusions as the previous evaluation for the taxable years 1997-99.  As a result, respondent did not abuse his discretion in following the applicable procedures using the only information provided to him, which justifiably led to the same conclusions as those reached in the hearing for the taxable

years 1997-99.  In addition, petitioners' proposal did not qualify for the 5-year rule because they failed to provide substantiation for the "conditional" and "excessive necessary" expenses listed on their financial statement.  See Schulman v. Commissioner, T.C. Memo. 2002-129 (citing 2 Administration, Internal Revenue Manual (CCH), sec. 5.15.1.3(8)(a), at 17,655).  Respondent was therefore within his discretion to reject petitioners' proposed installment agreement.

II.  Respondent Did Not Abuse His Discretion When He Denied Equitable Relief Pursuant to Section 6015(f) to Lois Etkin for the Taxable Years 1997, 1998, 1999, and 2000

We note this case involves unpaid tax liabilities for the years in issue.  Because no understatements of tax or deficiencies are involved, Lois Etkin does not qualify for relief under section 6015(b) or (c).  See sec. 6015(b)(1) and (c)(1); Washington v. Commissioner, 120 T.C. 137, 146-147 (2003).  Therefore, our review is limited to section 6015(f), which permits in certain circumstances relief from joint and several liability for unpaid taxes.  See Ewing v. Commissioner, 118 T.C. 494, 497 (2002). Section 6015(f) grants the Commissioner discretion to grant equitable relief from tax liability to a spouse if, taking into account all the facts and circumstances, it is inequitable to hold the spouse liable for any unpaid tax or any deficiency (or any portion of either) and relief is not available under section 6015(b) or (c).  In order to prevail, Lois Etkin must demonstrate

that respondent abused his discretion by acting arbitrarily, capriciously, or without sound basis in fact or law.  See Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003); Butler v. Commissioner, 114 T.C. 276, 289-290, (2000).  Lois Etkin bears the burden of proving that respondent abused his discretion in denying her equitable relief under section 6015(f).  See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004); Ogonoski v. Commissioner, T.C. Memo. 2004-52.

Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. 447, 448, prescribes guidelines that will be considered in determining whether an individual qualifies for equitable relief under section 6015(f).[6]  This Court has upheld the use of the guidelines specified in Rev. Proc. 2000-15, supra, and has analyzed the factors listed therein, in reviewing the Commissioner's negative determinations under section 6015(f).  See, e.g., Washington v. Commissioner, supra at 147-152.  Rev. Proc. 2000-15, sec. 4.01, lists seven threshold conditions that must be satisfied before the

---

[6]On Aug. 11, 2003, the Commissioner issued Rev. Proc. 2003-61, 2003-2 C.B. 296, which supersedes Rev. Proc. 2000-15, 2000-1 C.B. 447, effective for requests for relief pending on or after Nov. 1, 2003, for which no preliminary determination letter has been issued as of Nov. 1, 2003.  Rev. Proc. 2003-61, supra, does not apply in this case because petitioners' request for relief was denied before the effective date.

Commissioner will consider a request for equitable relief under section 6015(f). Those conditions are:

(1) The requesting spouse filed a joint return for the taxable year for which relief is sought;

(2) relief is not available to the requesting spouse under section 6015(b) or (c);

(3) the requesting spouse applies for relief no later than 2 years after the date of the Commissioner's first collection activity after July 22, 1998;

(4) the liability remains unpaid;

(5) no assets were transferred between the spouses as part of a fraudulent scheme;

(6) there were no disqualified assets transferred to the requesting spouse by the nonrequesting spouse; and

(7) the requesting spouse did not file the return with fraudulent intent.

Respondent concedes that threshold conditions (1), (2), (3), (4), and (7) have been met. However, respondent contends that Lois Etkin does not satisfy threshold conditions (5) and (6) because Davis Etkin added Lois Etkin to the deed for his house, and he transferred a car and a boat to Lois Etkin after they became delinquent in paying taxes. Respondent contends that the addition of Lois Etkin's name to the deed for their marital residence within the 2 years preceding March 28, 2001, and the

transfer to Lois Etkin of a jointly owned car and boat between March 28, 2001, and January 1, 2003,[7] were part of a fraudulent scheme to frustrate the collection of their delinquent taxes. Further, respondent argues that these assets constitute "disqualified assets" and that therefore Lois Etkin also fails to meet the sixth threshold requirement. Section 6015(c)(4)(B)(i) provides that a "disqualified asset" is any property or right to property transferred to an individual making the election by the other person filing the joint return if the principal purpose of the transfer is the avoidance of tax or the payment of tax.[8] If

_____

[7]Respondent derives these dates from the representations made by Lois Etkin on two different Innocent Spouse Questionnaires for Electing Spouse that were submitted on Mar. 28, 2001, and Jan. 1, 2003. The first form was submitted for the consideration of Lois Etkin's sec. 6015(f) claim in connection with petitioners' hearing for the taxable years 1997-99, and the second form was submitted in connection with the consideration of Lois Etkin's sec. 6015(f) claim in connection with petitioners' hearing for the taxable year 2000. On the March 2001 questionnaire, Lois Etkin stated under penalty of perjury that Davis Etkin added her name to the title of the home "within the last year or two." In completing his portion of the form, Davis Etkin stated that no assets were transferred between him and Lois Etkin except for the house. By the time Lois Etkin submitted the second questionnaire pertaining to the sec. 6015(f) relief request for the taxable year 2000 in January 2003, the answer to this question changed. Lois Etkin stated that her husband had transferred a jointly owned car and a boat to her. Therefore, respondent deduced that the house had been transferred within 2 years (or less) before Mar. 28, 2001, and that the boat and the car had been transferred between Mar. 28, 2001, and Jan. 1, 2003. When asked at trial about the exact dates, petitioners were unable to recall.

[8]Sec. 6015(c)(4)(B)(ii)(I) provides a presumption that any transfer which is made after the date which is 1 year before the

(continued...)

disqualified assets are transferred to the requesting spouse by the nonrequesting spouse, relief will be available only to the extent that the liability exceeds the value of those disqualified assets. Rev. Proc. 2000-15, sec. 4.01(6). Petitioners presented no evidence of the value of the disqualified assets. However, on the basis of the figures on the financial statement, the combined value of the home, the boat, and the automobile is at least $210,000.[9]

Petitioners' only rebuttal to respondent's contentions is that Davis Etkin transferred this property to Lois Etkin because of their marriage. However, this argument loses much of its credibility in light of the fact that Davis Etkin transferred the property to Lois Etkin over 10 years after they were married. In addition, the transfer of the house occurred proximately to the filing of the liens for the taxable years 1997-99 and before the April 2002 Federal tax lien was filed for the taxable year 2000. The car and the boat were transferred to Lois Etkin after the

---

[8](...continued)
date on which the first letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals is sent shall be presumed to have as its principal purpose the avoidance of tax or the payment of tax. Respondent does not rely on this presumption in this case since there was no notice of deficiency or of proposed deficiency.

[9]Given the outdated nature of the statement, it is plausible that these values have slightly fluctuated; however, this does not concern us in light of the fact that the estimate exceeds the tax liability by approximately 400 percent.

levies for the taxable years 1997-99 were filed and very close to the filing of the notice of Federal tax lien on April 5, 2002.[10] Previous cases have upheld the Commissioner's determination that the taxpayer did not meet the threshold factors under Rev. Proc. 2000-15, sec. 4.01(6), on the basis of the sequence of events and the proximity of the transfer to any action on behalf of the IRS. See, e.g., Ohrman v. Commissioner, T.C. Memo. 2003-301. In Ohrman, the taxpayers entered into a separation agreement shortly after the Commissioner proposed adjustments to their tax liability. The result of the separation agreement was the transfer of assets from the taxpayer's husband to her. The husband, however, continued to pay all of the expenses, and the taxpayer continued to engage in a marital relationship with her husband. The Commissioner concluded that the transfer of assets between the taxpayers was an effort to shield those assets from the Commissioner's attempt to collect the tax liability. The Commissioner based his conclusion on the proximity of the transfer to the taxpayer's learning of the potential liability. Given that there was no logical reason for the transfer that could be substantiated and that the transfer was proximate to the inception of the taxpayer's knowledge of the liability for the taxable years

---

[10]We determined, on the basis of petitioners' sworn statements, that the boat and the car were transferred sometime between Mar. 28, 2001, and Jan. 1, 2003. The notice of Federal tax lien for the taxable year 2000 was filed on Apr. 5, 2002.

in question, the Commissioner determined that the purpose of the transfer was to avoid tax, and thus the taxpayer did not meet the sixth threshold condition of Rev. Proc. 2000-15, sec. 4.01.  In particular, the Commissioner concluded that the taxpayer received a transfer of disqualified assets.  This Court upheld the Commissioner's determination.

Davis Etkin added Lois Etkin's name to the deed of their marital residence within 2 years preceding March 28, 2001, and transferred their jointly owned car and boat between March 2001 and January 2003.  These transfers took place shortly after their tax liabilities arose, and the transfer of the car and the boat took place after petitioners received the notice of intent to levy on their property.  Further, Davis Etkin claimed that the transfers were made because of his marriage to Lois Etkin; however, the record shows that Lois and Davis Etkin have been married since 1990 and that Davis Etkin owned the house before he married Lois Etkin.  In addition, Davis Etkin did not convert ownership of the car or boat to joint ownership; rather, he transferred the assets solely to Lois Etkin.  Petitioners have not produced any evidence that the principal purpose of the transfer was not to avoid the payment of tax.  Further, petitioners have not provided any other logical or substantial reason for the

transfer.[11]  Nor have petitioners shown the value of the
disqualified assets.  Therefore, we conclude that Lois Etkin has
failed to satisfy the sixth threshold requirement of Rev. Proc.
2000-15, sec. 4.01 and thus does not qualify for equitable relief
under section 6015(f).  Because we decided that Lois Etkin
received a transfer of disqualified assets from Davis Etkin, we
conclude that Lois Etkin does not meet all seven of the threshold
conditions of Rev. Proc. 2000-15, sec. 4.01.[12]

In addition, we find adequate support in the record to
sustain the Appeals officer's determination that Lois Etkin, when
signing the returns, should have known that the tax for the years
in question would not be paid.  Lois Etkin possessed sufficient
knowledge and education to understand that she was signing a joint
income tax return showing a balance due for the year in question.
She simply relied on Davis Etkin's assertions that he would pay

---

[11]In Ohrman v. Commissioner, T.C. Memo. 2003-301, there was
a dispute as to who bears the burden of proving that the taxpayer
did or did not receive a transfer of disqualified assets.  The
Court in Ohrman refrained from resolving the dispute because "the
preponderance of the evidence establishes that the principal
purpose of the transfer was the avoidance of tax."  We are also
convinced that the preponderance of the evidence resolves the
issue in this case and therefore do not need to determine who has
the burden of proof.

[12]Since we conclude that the transfer of assets had a
principal purpose of avoiding tax, and therefore Lois Etkin fails
to satisfy one of the threshold conditions resulting in her
disqualification from equitable relief, it is unnecessary for us
to consider respondent's contention that the transfer was part of
a fraudulent scheme by petitioners.

the liability late through installment payments.  Further, Lois Etkin had specific notice that her tax liability for the taxable year 2000 would remain unpaid because she signed the joint income tax return for the taxable year 2000, showing a significant balance due, while her request for innocent spouse relief was being considered for the taxable years 1997-99.  Accordingly, we conclude that respondent did not abuse his discretion by acting arbitrarily, capriciously, or without sound basis in fact in denying Lois Etkin's request for equitable relief under section 6015(f).

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decisions will be entered for respondent</u>.