T.C. Summary Opinion 2006-7


UNITED STATES TAX COURT


LAYVONNE NEWELL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3292-04S.              Filed January 25, 2006.


Layvonne Newell, pro se.

<u>John F. Driscoll</u>, for respondent.


WHERRY, <u>Judge</u>:  The petition in this case was filed pursuant to the provisions of section 7463.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  The instant proceeding arises from a petition for judicial review filed in response to a Notice of

_____

[1] Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended.

Determination Concerning Collection Action(s) Under Section 6320 and/or 6330. The issue for decision is whether respondent may proceed with collection action as so determined.

## Background

On or about August 20, 2002, petitioner filed a Federal income tax return for the year 2001. She reported thereon wage income of $45,794, a tax liability of $4,256, a withholding credit of $2,846, and a remaining amount due of $1,451. No payment was submitted with the return. At that time, petitioner also had outstanding tax liabilities for the 1995, 1996, and 1997 taxable years, all stemming likewise from self-reported amounts in conjunction with insufficient withholding or other payment.

In August of 2002, petitioner entered into an installment agreement with respondent to make appropriate payments to satisfy her outstanding 1995, 1996, 1997, and 2001 liabilities. However, shortly thereafter petitioner was diagnosed with brain cancer and apparently defaulted on the installment agreement after a single payment. She has since undergone brain surgery, chemotherapy, and radiation treatments and has been unable to work. Petitioner was previously employed as a registered nurse.

On or about September 23, 2002, respondent assessed the reported 2001 liability, as well as statutory additions to tax and interest. Subsequently, during April of 2003, Internal Revenue Service (IRS) representatives of the Kansas City,

Missouri, office communicated with petitioner regarding her then-outstanding 1995, 1996, 1997, 2001, and 2002 liabilities.[2] Petitioner apprised the representatives concerning her medical situation, indicating that she had been out of work since her surgery in September of 2002 and subsequent commencement of chemotherapy and that she would continue to be out of work until at least August of 2003. The representatives advised petitioner that she would need to provide relevant financial information before she could be afforded any type of administrative relief. These communications ended with an understanding that petitioner would contact the representatives by August 1, 2003, to update them as to her health and employment status.

When petitioner failed to contact the IRS as agreed, a Final Notice of Intent To Levy and Notice of Your Right to a Hearing was issued to petitioner on September 1, 2003, with respect to her 2001 income tax liabilities. In response, petitioner submitted a timely Form 12153, Request for a Collection Due Process Hearing, setting forth her disagreement with the notice of levy, as follows: "I do not agree with this levy/seizure because, now, I'm not working and I won't be working until at least next year. My doctor still has me on chemotherapy. I am not able to pay this at this time."

---

[2] As was the situation with respect to 1995, 1996, 1997, and 2001, petitioner filed a Federal income tax return for 2002 reporting a balance due and insufficient withholding.

On or about October 20, 2003, petitioner contacted the Kansas City, Missouri, office and advised that she remained out of work due to ongoing chemotherapy and was unable to pay her outstanding tax liabilities. Representatives indicated that they would send to petitioner a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals,[3] and asked that she call them back with the requested financial information by November 10, 2003. On October 22, 2003, the representatives tried to contact petitioner by telephone, but when they were unsuccessful either in reaching her or in leaving a message, they sent the previously discussed Form 433-A with a letter asking that petitioner return the completed form by November 5, 2003.

On October 29, 2003, petitioner provided financial information telephonically to representatives of the Kansas City, Missouri, office. After reviewing the information, representatives determined that further substantiation was needed. They again tried to reach petitioner by telephone or to leave a message but were unsuccessful. At that juncture, petitioner's case was forwarded to the IRS Office of Appeals in Jackson, Mississippi.

---

[3] Respondent's motion for summary judgment mistakenly refers in several instances to a "Form 433-F", rather than a "Form 433-A". The correct designation for the document is clear from the record and is used throughout this opinion.

By a letter dated December 11, 2003, Suzanne L. Magee, the settlement officer to whom petitioner's case had been assigned, scheduled a hearing for January 7, 2004, in Jackson, Mississippi. The letter also advised petitioner regarding collection alternatives, stating:

> Under the Collection Due Process provisions I can consider payment alternatives. If you do not have the immediate ability to fully satisfy this tax debt, you may qualify for a monthly payment agreement or an Offer-in-Compromise based upon an inability to pay. If you would [sic] to explore payment arrangements, please complete the enclosed Form 433-A, Collection Information Statement. Copies of all monthly billings, including utilities and installment notes as well as bank statements must be provided as attachments to the statement in verifying the accuracy of the financial information provided on the statement. For variable monthly billing amounts and your banking statements, include at least 3 months worth so an average amount can be considered. Please provide the completed statements with the attachments to me **by January 5, 2004.**

On December 17, 2003, petitioner and Ms. Magee discussed the status of petitioner's collection hearing request by telephone. During that conversation, petitioner informed Ms. Magee that she had already completed and provided to the IRS a Form 433-A.[4] Ms. Magee asked that petitioner provide her, before the scheduled hearing, with a completed copy either of the previous Form 433-A or of the 433-A enclosed with Ms. Magee's December 11, 2003, letter.

---

[4] There is no evidence in the record that petitioner in fact provided a written, completed Form 433-A during her communications with the Kansas City, Mo., IRS office.

The collection hearing between petitioner and Ms. Magee was held as scheduled on January 7, 2004.  The only position asserted by petitioner at the hearing was that she was unable to pay her outstanding liabilities.  In support thereof, she provided to Ms. Magee a completed Form 433-A.  On the Form 433-A, petitioner indicated that she and one dependent, a son of 13 years of age, lived with her parents; that petitioner was on leave from her occupation as a registered nurse; and that petitioner possessed assets to the extent of $500 of furniture and personal effects and a $5 balance in a savings account.  The Form 433-A then reflected the following analysis of monthly income and living expenses:

Monthly income:

|  |  |
| --- | --- |
| Disability insurance | $2,600.00 |

Monthly expenses:

|  |  |
| --- | --- |
| Food, clothing, and misc. | 500.00 |
| Housing and utilities (parents) | 300.00 |
| Transportation | 100.00 |
| Health care | 620.00 |
| Life insurance | 98.74 |
| Other expenses | 360.00 |
| Total | 1,980.00[5] |

The $360 in other expenses was for a contribution to petitioner's church.

---

[5] The Court notes that petitioner apparently rounded the total of $1,978.74 for the listed expenses.

After analysis of the Form 433-A, Ms. Magee advised petitioner that, assuming the expenses claimed on the Form 433-A could be substantiated, petitioner would appear to qualify for an installment agreement with monthly payments of $700. In arriving at her determination with respect to a $700 payment, Ms. Magee took into account the following specific monthly amounts: (1) the $2,600 of claimed disability insurance income; (2) $782 for food, clothing, and miscellaneous expenses pursuant to IRS National Standards (although petitioner claimed only $500 on her Form 433-A); (3) the $300 claimed for housing and utilities; (4) the $100 claimed for transportation; (5) the $620 claimed for health care; and (5) the $98 claimed for insurance. The claimed charitable contribution was not allowable under IRS procedures. When petitioner objected to a $700 payment on grounds that it would negatively impact her ability to make an appropriate tithe to her church, Ms. Magee pointed out that disallowance of the contribution amount was largely offset by allowance of an additional $282 for food, clothing, and miscellaneous expenses. The collection hearing concluded with an understanding that petitioner would provide the remaining necessary substantiation and would advise Ms. Magee by January 15, 2004, if she was interested in accepting a $700 monthly installment agreement.

Having received no further response from petitioner, respondent on January 23, 2004, issued to petitioner the

aforementioned Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, sustaining the proposed levy action. Petitioner's petition challenging this notice was filed on February 24, 2004, and reflected an address in Hazlehurst, Mississippi. She therein expressed her request for relief as follows: "I am requesting to extend the period of payment, due to the fact that I am currently on disability and have medical payments, [illegible] medical insurance payment due. I don't know when I'll be returning to work, but I do need an extension on the payment period."

On October 5, 2004, John F. Driscoll, trial counsel for respondent in this case, sent to petitioner a letter explaining his intent to file a motion for summary judgment and inviting petitioner instead to contact him within 10 days if she wished to discuss any offer of payment to resolve the case or to provide any additional relevant financial information. Thereafter, on October 18, 2004, Mr. Driscoll reached petitioner by telephone, and during that conversation petitioner displayed some interest in providing additional information in an attempt to reach a settlement of her case. The parties agreed that Mr. Driscoll would provide petitioner with a new Form 433-A and that petitioner in the near future would submit any additional information or offer of settlement that she wished to be considered in connection with this case. Mr. Driscoll then sent

a followup letter dated October 20, 2004, enclosing a Form 433-A, noting that a $700 monthly installment payment did not appear unreasonable based on the financial information provided to date, and encouraging petitioner to provide information that she felt accurately described her current financial situation and a specific alternative to the proposed $700 monthly payment.

On October 21, 2004, respondent filed a motion for summary judgment. The Court issued an order directing petitioner to file any response on or before December 3, 2004, and in the interim, on November 22, 2004, held a conference call with the parties to encourage them to work together in resolving this matter and to impress upon petitioner the importance of current and accurate financial data. On December 2, 2004, a letter received from petitioner was filed as her response to the motion for summary judgment. In that document petitioner stated, inter alia:

> I take full responsibility for not paying taxes in the 90s and for not having enough withheld in the early 2000s. Prior to this time, I always paid my tax obligations. I thought it would be easy for me to play 'catch up' and pay the taxes at a later date, but I didn't factor in the penalties and interest the IRS would add to the tax bill. I did have a payment plan with the IRS and was making payments until I was diagnosed with a brain tumor and underwent brain surgery. Right now, I'm in the biggest fight of my life-the fight for my life-and I must be honest with you, my tax obligation has not been a priority. I know I'm still responsible for this liability and I am willing to resolve this matter, but I cannot afford $700 per month.

In case you have not seen the financial statement I completed for the IRS, here's a breakdown of my monthly income and expenses:

Disability income, which started in 01/2003: $2,600

Expenses

Health insurance: $500/mo

Hospital bills: $25,000 (100/mo)

Doctor's bills: $1,600 (50/mo)

My medications: $120/mo

My son's medications: $100/mo

My son's school obligations:

Uniforms: $500/six mo

Lunch: $27/mo

Travel for doctor's appointments: $240/mo

Household expenses: $700/mo

As of 2/2005 I'll be responsible for chemotherapy out of my pocket. Which will be approx $3000-5000 per treatment (with approx 6 treatments)

Food: $200/mo

Miscellaneous: $100-150/mo

Petitioner closed the financial information in her letter with: "I can send them $75 per month, in light of my other more pressing obligations."

Respondent's motion was calendared for hearing on January 25, 2005, in Jackson, Mississippi. Both parties appeared and were given an opportunity to be heard. Petitioner elected at

that time to be sworn in, to offer testimony, and to be subjected to cross-examination. She testified generally about her medical and financial situation, and she confirmed that her expenses had changed since she submitted the Form 433-A to Ms. Magee. She did not, however, provide an updated Form 433-A, nor did she offer evidence substantiating any of the expenses reflected in the above-quoted letter. When questioned by the Court as to how she determined "that $75 a month was the most that you could afford to pay in your current situation?", petitioner responded: "Well, I pay other things that before, when I went to talk with the IRS agent, they didn't allow. So I still have to pay them. So usually, I just said well, I can afford $75 a month out of what I have to pay." At the conclusion of the proceedings, the Court took respondent's motion for summary judgment under advisement. However, because petitioner chose essentially to try her case on the merits, we shall now deny respondent's motion as moot and shall decide the case on the full record presented.

Discussion

## I. Collection Actions--General Rules

Section 6331(a) authorizes the Commissioner to levy upon all property and rights to property of a taxpayer where there exists a failure to pay any tax liability within 10 days after notice and demand for payment. Sections 6331(d) and 6330 then set forth procedures generally applicable to afford protections for

taxpayers in such levy situations. Section 6331(d) establishes the requirement that a person be provided with at least 30 days' prior written notice of the Commissioner's intent to levy before collection may proceed. Section 6331(d) also indicates that this notification should include a statement of available administrative appeals. Section 6330(a) expands in several respects upon the premise of section 6331(d), forbidding collection by levy until the taxpayer has received notice of the opportunity for administrative review of the matter in the form of a hearing before the IRS Office of Appeals. Section 6330(b) grants a taxpayer the right to a fair hearing before an impartial Appeals officer upon request.

Section 6330(c) addresses the matters to be considered at the hearing:

> SEC. 6330(c). Matters Considered at Hearing.--In the case of any hearing conducted under this section--
>
> (1) Requirement of investigation.--The appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met.
>
> (2) Issues at hearing.--
>
> (A) In general.--The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including--
>
> (i) appropriate spousal defenses;

   (ii) challenges to the appropriateness of collection actions; and

   (iii) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.

   (B) Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

Once the Appeals officer has issued a determination regarding the disputed collection action, section 6330(d) allows the taxpayer to seek judicial review in the Tax Court or a District Court, depending upon the type of tax. In considering whether taxpayers are entitled to any relief from the Commissioner's determination, this Court has established the following standard of review:

> where the validity of the underlying tax liability is properly at issue, the Court will review the matter on a de novo basis. However, where the validity of the underlying tax liability is not properly at issue, the Court will review the Commissioner's administrative determination for abuse of discretion. [Sego v. Commissioner, 114 T.C. 604, 610 (2000).]

## II.   Analysis

Nothing in the record indicates that petitioner has at any time throughout the administrative or judicial proceedings attempted to challenge her underlying tax liability. In fact, in

her response to respondent's motion, she writes: "I know I'm still responsible for this liability and I am willing to resolve this matter, but I cannot afford $700 per month." She likewise stated at the hearing that "this case has come about because I do owe the Government money." Accordingly, we review respondent's determination to proceed with collection for abuse of discretion. Action constitutes an abuse of discretion under this standard where arbitrary, capricious, or without sound basis in fact or law. Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

In her petition, petitioner asks for "an extension on the payment period", and in her response to the motion for summary judgment she expresses a willingness "to work out another payment plan or an offer in compromise". Sections 6159 and 7122 govern installment agreements and offers-in-compromise, respectively.

Section 6159(a), as in effect at the time petitioner's case was before the IRS Office of Appeals, provided: "The Secretary is authorized to enter into written agreements with any taxpayer under which such taxpayer is allowed to satisfy liability for payment of any tax in installment payments if the Secretary determines that such agreement will facilitate collection of such liability." Regulations promulgated under section 6159 grant to the IRS discretion to accept or reject any proposed installment agreement. Sec. 301.6159-1(b)(1)(i), Proced. & Admin. Regs. The IRS has set forth procedures in the Internal Revenue Manual (IRM)

for evaluating whether an installment agreement will facilitate collection.  See 2 Administration, Internal Revenue Manual (CCH), sec. 5.15.1 to 5.15.1.36.3, with exhibits, at 17,653-17,745.  These procedures operate through an analysis of the taxpayer's current financial system, comparing monthly income to allowable expenses.  See id.  This Court has held that reliance on IRM guidelines in evaluating an installment agreement does not constitute an abuse of discretion in the context of collection proceedings.  E.g., Orum v. Commissioner, 123 T.C. 1, 13 (2004), affd. 412 F.3d 819 (7th Cir. 2005); Etkin v. Commissioner, T.C. Memo. 2005-245; Castillo v. Commissioner, T.C. Memo. 2004-238; Schulman v. Commissioner, T.C. Memo. 2002-129.

Section 7122(a), as pertinent here, authorizes the Secretary to compromise any civil case arising under the internal revenue laws.  Regulations promulgated under section 7122 set forth three grounds for compromise of a liability:  (1) Doubt as to liability, (2) doubt as to collectibility, or (3) promotion of effective tax administration.  Sec. 301.7122-1(b), Proced. & Admin. Regs.  With respect to the third-listed ground, a compromise may be entered into to promote effective tax administration where:  (1)(a) Collection of the full liability would cause economic hardship; or (b) exceptional circumstances exist such that collection of the full liability would undermine public confidence that the tax laws are being administered in a

fair and equitable manner; and (2) compromise will not undermine compliance by taxpayers with the tax laws. Sec. 301.7122-1(b)(3), Proced. & Admin. Regs. Economic hardship is defined as an inability to meet reasonable basic living expenses. Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.

Turning to the case at bar, the Court certainly sympathizes with the personal and medical difficulties endured by petitioner in recent years. However, the record lacks evidence that would establish an abuse of discretion on the part of respondent in evaluating petitioner's circumstances. The only Form 433-A in evidence submitted by petitioner, despite repeated invitations to provide updated documentation, does not, when analyzed in accordance with the IRM, show that an installment agreement of $700 would be unreasonable. Nor does it establish an inability to meet basic living expenses.

The only other financial information offered by petitioner; i.e., the figures set forth in her December 2, 2004, response to the motion for summary judgment and testified to at trial, is problematic on several fronts. First and foremost, the amounts are completely unsubstantiated. There would also appear to be rounding and estimation, the extent of which is unclear. The reference to an expense for chemotherapy, for instance, is broad, generalized, and affords no meaningful way to arrive at a monthly outlay. Furthermore, the $75 monthly payment suggested by

petitioner seems to be a random number not derivable from or bearing any particular relationship to the expenses upon which it is purportedly premised.  As a result, the Court is unable to say that respondent at any point arbitrarily or unreasonably failed to take into account meaningful and pertinent information about petitioner's financial situation that would render the determination to proceed with levy an abuse of discretion.  See Orum v. Commissioner, supra; Etkin v. Commissioner, supra.

As much as we would like to assist petitioner, in light of her repeated failure to take advantage of opportunities to provide adequate documentation of her apparently changed financial circumstances, we simply do not have before us evidence to show that a remand would be appropriate and productive.  The Court will sustain respondent's collection action.

To reflect the foregoing,

> An appropriate order denying respondent's motion for summary judgment and decision for respondent will be entered.