T.C. Memo. 2009-159

UNITED STATES TAX COURT

MICHAEL WILLIAMS AND SHERYL WILLIAMS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21031-07L.                    Filed June 30, 2009.

<u>Steven R. Mather</u> and <u>Elliott H. Kajan</u>, for petitioners.

<u>Linette B. Angelastro</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  This action was commenced in response to a
Notice of Determination Concerning Collection Action(s) Under
Section 6320 and/or 6330 (notice of determination) with respect
to petitioners' 1996 Federal income tax liability.  The remaining
issue for decision is whether the settlement officer abused his
discretion in declining to postpone his determination so that

petitioners' could submit an offer-in-compromise. Unless otherwise indicated, all section references are to the Internal Revenue Code.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in California at the time their petition was filed.

From about 1971 through 1998 Walter J. Hoyt III and other members of the Hoyt family organized, promoted, and operated numerous cattle and sheep-breeding partnerships (Hoyt partnerships), as most recently described in Keller v. Commissioner, __F.3d__ (9th Cir. June 3, 2009). In 1996, petitioners participated in Shorthorn Genetic Engineering 1982-1 (SGE), a Hoyt partnership that owned partnership interests in operating-tier Hoyt partnerships. Petitioners filed their 1996 joint Federal income tax return on July 30, 1997, with an attached Schedule E, Supplemental Income and Loss, reporting a partnership loss of $216,497 from SGE. The Internal Revenue Service (IRS), however, determined that SGE was subject to provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, and disallowed the partnership's claimed loss for 1996.

On September 27, 2006, after partnership-level proceedings were completed, the IRS assessed tax of $22,102 and interest of $20,478.82 for petitioners' taxable year 1996 as a result of a partnership-tier adjustment before the TEFRA assessments of docket No. 25205-07. The assessment was followed with a Notice and Demand bill for the 1996 tax liability, which petitioners failed to pay. On February 17, 2007, the IRS sent to petitioners a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing.

Petitioners submitted a Form 12153, Request for a Collection Due Process Hearing (section 6330 hearing), to review the levy action. In their request petitioners asserted that a levy would be improper because of equity and hardship concerns and that an offer-in-compromise was warranted. Petitioners' primary concern was that they were "unwitting victims" of the Hoyt abusive tax shelters and therefore should not be subject to penalties and interest that resulted primarily from the "longstanding" nature of the Hoyt partnership cases.

A settlement officer sent a letter informing petitioners that a telephonic Appeals conference was scheduled for June 11, 2007, at which time petitioners could discuss their disagreement with the levy and/or alternatives to the collection action. The letter also requested petitioners to provide, before the conference, a completed Form 433-A, Collection Information

Statement for Wage Earners and Self-Employed Individuals, all supporting documentation for Form 433-A, and, if it was their intent, a Form 656, Offer in Compromise. The letter reemphasized that collection alternatives could not be considered at the conference unless the requested information was sent before the conference date.

Petitioners, through their counsel, informed the settlement officer that they had additional TEFRA-related assessments that involved Hoyt partnerships pending for other years as a result of Court proceedings. They proposed that an offer-in-compromise encompassing all their assessments would be an appropriate resolution. The settlement officer requested details on the TEFRA matters along with the Form 433-A and related documents, reasoning that an offer-in-compromise could be determined while awaiting the assessments but cautioning that he would not hold the case indefinitely. The settlement officer received and reviewed the requested documents.

On June 11, 2007, the settlement officer and petitioners' counsel had a telephone conference. During the conference, the settlement officer again explained that he could not hold petitioners' case indefinitely and suggested that, after the issuance of a notice of determination, he could grant an extension of 120 days before any collection action, thus providing petitioners with 150 days free from levy during which

the additional tax liabilities could be assessed and an offer-in-compromise filed.  The telephone conference ended with the settlement officer agreeing to wait until July 6, 2007, to follow up; but if at that time the assessments were not imminent, he would issue the notice of determination.  Petitioner's counsel agreed.

On July 2, 2007, an agent of petitioners' counsel (the agent) called the settlement officer asking him to postpone any decision for another month to further allow the assessments to be made.  In checking respondent's Integrated Data Retrieval System (IDRS), the settlement officer saw no pending assessments and reiterated his agreement with petitioners' counsel from the prior telephone conference.

In a followup telephone conversation with the agent, the settlement officer agreed to hold petitioners' case until August 3, 2007.  If no additional assessments were pending at that time, however, he would issue the notice of determination along with the 120-day extension to pay.  The agent agreed.

On August 7, 2007, the agent called the settlement officer requesting more time for Appeals to hold the case and to await the assessments.  The settlement officer checked IDRS and still saw no pending assessments.  The settlement officer, determining that there was no doubt as to collectibility of the assessed 1996 tax liability and that he was unable to determine collectibility

of the assessments that had not yet been made, decided to close the case as planned.

The Appeals Office sent to petitioners a notice of determination, dated August 20, 2007, upon which this case is based. The notice of determination stated that petitioners owed tax liabilities for 1993, 1994, and 1995 that were not formally a part of their section 6330 hearing but would be included in any collection alternative offered by Appeals for a total tax liability of approximately $70,000. A review of their financial documents showed that petitioners had the ability to pay in full this tax liability. The notice of determination also indicated that petitioners' case had been held by the Appeals Office for over 2 months.

The notice of determination concluded that the pending levy was not an appropriate measure and was not sustained. The Appeals Office granted petitioners a 120-day extension to pay under Internal Revenue Manual (IRM) pt. 5.14.5.1 (Mar. 30, 2002). If full payment was not received after that time, however, it was determined that the IRS might levy without any further contact with petitioners.

For trial purposes only, this case was consolidated with another case involving petitioners--docket No. 25205-07. In that case, the timeliness of assessments for 1990-1995 is disputed. See T.C. Memo. 2009-158, filed this date.

OPINION

Petitioners argue that respondent insists on tax liabilities being assessed before those liabilities can be considered in an offer-in-compromise. Petitioners claim, however, that respondent delayed making assessments of the liabilities related to petitioners' case, and, thus, these pending assessments were effectively excluded from being considered in any offer-in-compromise that petitioners could have proposed. Petitioners ultimately contend that the settlement officer refused to hold open the section 6330 hearing until the other tax years' liabilities had been assessed and that he abused his discretion by not considering an offer-in-compromise that included those liabilities.

Respondent maintains that: (1) Petitioners proposed no collection alternatives that the settlement officer could act on; (2) petitioners could fully pay the tax in issue; and (3) the settlement officer gave proper consideration to petitioners' concerns.

Section 6330 generally provides that the Commissioner cannot proceed with levy on a taxpayer's property until the taxpayer has been given notice of and the opportunity for a section 6330 hearing and, if dissatisfied, with judicial review of the administrative determination. Because the underlying liability is not in issue here, we review the Appeals determination for

abuse of discretion. See <u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000). To demonstrate that there was an abuse of discretion, petitioners must show that the settlement officer's determination was arbitrary, capricious, or without sound basis in fact or law. See <u>Giamelli v. Commissioner</u>, 129 T.C. 107, 111 (2007). Petitioners have not done so.

Petitioners argue that the settlement officer abused his discretion in not holding their case open until the pending liabilities from other years were assessed. Petitioners, however, present neither evidence nor authority that supports their view. To the contrary, the Appeals Office shall "attempt to conduct a * * * [section 6330] hearing and issue a Notice of Determination as expeditiously as possible under the circumstances." Sec. 301.6330-1(e)(3), Q&A-E9, Proced. & Admin. Regs.; see <u>Murphy v. Commissioner</u>, 125 T.C. 301, 322 (2005) (citing <u>Clawson v. Commissioner</u>, T.C. Memo. 2004-106), affd. 469 F.3d 27 (1st Cir. 2006). The settlement officer held petitioners' Appeals case open for over 2 months in a cooperative effort regarding the tax liabilities outside of the section 6330 hearing. The settlement officer did not abuse his discretion by declining to delay further his determination.

Petitioners assert that they should have been allowed to make an offer-in-compromise within the Appeals process but that the settlement officer "made it clear" that no offer was going to

be accepted where there are pending assessments, thus leaving petitioners with no alternatives.  While the settlement officer testified that an offer-in-compromise cannot be accepted with respect to pending assessments, he also stated that such an offer can nevertheless be submitted and considered.  The settlement officer might have considered an offer-in-compromise that included the pending assessments had petitioners timely submitted one.  Petitioners chose not to submit any offer-in-compromise at any time during the Appeals process.

Petitioners' agent testified that the settlement officer was always "very reasonable", that "in a very professional manner * * * he recognized the difficulties that were being presented to * * * [petitioners]", and that he "pointed out * * * an alternative [the IRS Compliance Division] for filing an offer-in-compromise". Petitioners' agent and counsel, however, preferred consideration by the Office of Appeals.

Section 7122(a) authorizes compromise of a taxpayer's Federal income tax liability.  "The decision to entertain, accept or reject an offer in compromise is squarely within the discretion of the appeals officer and the IRS in general." Kindred v. Commissioner, 454 F.3d 688, 696 (7th Cir. 2006); see sec. 7122; sec. 301.7122-1(c)(1), Proced. & Admin. Regs.; see also Fargo v. Commissioner, 447 F.3d 706, 713 (9th Cir. 2006) (recognizing that the IRM "contains numerous provisions that vest

Appeals Officers with the discretion to accept or reject offers-in-compromise"), affg. T.C. Memo. 2004-13.  Accordingly, the settlement officer did not abuse his discretion in failing to consider an offer-in-compromise that petitioners never made.  See Kindred v. Commissioner, supra at 696 (stating that "Without an actual offer in compromise to consider, it would be most difficult for either the Tax Court or this court to conclude that the appeals officer might have abused his discretion"); Kendricks v. Commissioner, 124 T.C. 69, 79 (2005) (holding that because "there was no offer in compromise before Appeals, there was no abuse of discretion in Appeals' failing to consider an offer in compromise").

Petitioners presented neither evidence nor argument showing any unwarranted actions or reasoning used by the settlement officer in reaching his determination.

To reflect the foregoing,

Decision will be entered for respondent.