T.C. Memo. 2010-19

UNITED STATES TAX COURT

KELLY J. MASELLI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27000-07L.            Filed February 3, 2010.

<u>Mark Harrington Westlake</u>, for petitioner.

<u>John R. Bampfield</u>, for respondent.

MEMORANDUM OPINION

COHEN, <u>Judge</u>:  This case was commenced in response to a
Notice of Determination Concerning Collection Action(s) Under
Section 6320 and/or 6330 with respect to petitioner's Federal
income tax liabilities for 2002, 2003, 2004, and 2005.  The issue
for decision is whether it was an abuse of discretion for the
Internal Revenue Service's (IRS) Appeals Office to reject

petitioner's proposed installment agreement.  Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

This case was submitted fully stipulated under Rule 122, and the stipulated facts are incorporated as our findings by this reference.  Petitioner resided in Montgomery County, Tennessee, at the time she filed her petition.  At all material times petitioner was a real estate broker.

Petitioner and her former husband were divorced on August 22, 2005.  At that time she had not filed Federal income tax returns for 2002, 2003, and 2004.

On March 30, 2007, the IRS sent petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, for 2002, 2003, 2004, and 2005.  The 2002 tax liability in the Letter 1058 was based on a substitute for return the IRS prepared under section 6020.  After the IRS sent the Letter 1058, petitioner filed a corrected 2002 return showing no tax liability, and the IRS updated her file accordingly.  Petitioner also filed tax returns for 2003, 2004, and 2005.  The outstanding tax liabilities for 2003, 2004, and 2005 resulted from insufficient estimated tax payments or withholding credits.

In response to the Letter 1058, through her counsel, petitioner submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing, on April 26, 2007, requesting that an installment agreement be considered as a collection alternative. Petitioner noted her reason for the request in an attachment to the form that claimed the tax liabilities arose because:

1. The taxpayer erroneously reported income of her ex-husband on her 2002, 2003, 2004 and 2005 tax returns. After amendment and correction of the tax returns to eliminate that portion of the income properly taxable to her ex-husband, the taxpayer's net liability will be substantially reduced.

2. Rental income from property co-owned by the taxpayer and her ex-husband was applied to improvements and non-deductible principal payments on loans. As a result the taxpayer's net taxable income exceeded disposable cash flow.

3. In 2005 sales of rental properties co-owned by the taxpayer and her ex-husband, did not generate sufficient net cash proceeds to satisfy the secured mortgage indebtedness necessary to clear title for sale and also pay the applicable capital gains from the sales. Although little or no net cash proceeds were available, the total amount realized significantly exceeded reported cost basis.

The hearing on petitioner's request was scheduled for September 11, 2007. In a September 7, 2007, letter petitioner's counsel outlined petitioner's contentions. Enclosed with the September 7, 2007, letter was petitioner's completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, with attached bank statements, home loan statements, and vehicle loan statements. Also enclosed with the

letter was a completed Form 433-B, Collection Information Statement for Businesses, for Gateway Realty & Investment Group, L.L.C., along with supporting financial documents. Petitioner owns the business with her husband, Mike Maselli, whom she married after 2005.

On the Form 433-A, petitioner reported monthly household income of $12,900, consisting of $2,000 attributable to petitioner; $8,000 attributable to her husband's business income; and $2,900 attributable to her husband's pension. Petitioner claimed monthly expenses consisting of $1,546 for food, clothing, and miscellaneous; $3,948 for housing and utilities; $1,165 for transportation; $225 for healthcare; $428 for taxes, $3,166 for court-ordered payments; $993 for life insurance; $515 for secured or legally perfected debts; and $728 for other expenses, totaling $12,700 (claimed amount rounded to nearest hundred). Petitioner proposed an installment payment of $200 per month until her income increased, based on her calculation of an excess monthly income of $185.

At the time petitioner submitted her Form 12153, she was in compliance with income tax filing requirements, but was not in compliance with estimated tax payments for 2007. Petitioner's counsel submitted petitioner's payment for the outstanding 2007 estimated income tax liability when he attended the face-to-face

hearing on September 11, 2007, bringing petitioner into compliance for 2007.

During the collection due process (CDP) hearing, the settlement officer reviewed the completed Forms 433-A and 433-B and prepared a list of additional information that she would need from petitioner, requesting that the information be submitted by September 28, 2007.  Petitioner, through her counsel, timely supplied the information.

The settlement officer determined that petitioner could pay $819 per month.  Her determination was based on petitioner's earning 18 percent of the household income.  In her calculations the settlement officer used 18 percent of the following expense amounts according to the IRS national and local standards for Montgomery County, Tennessee:  $1,331 for food, clothing, and miscellaneous; $1,308 for housing and utilities; $181 for operation of an automobile; and $478 for the finance payment on an automobile.  The settlement officer noted that she used all information petitioner had supplied to date to determine petitioner's ability to pay.

On October 2, 2007, the settlement officer's independent research of Montgomery County, Tennessee, property records verified petitioner's ownership of her claimed personal residence and identified a property on Public Square in Clarksville, Tennessee, as owned by petitioner with her former husband.  The

Public Square property had not been included on petitioner's Form 433-A.

That same day, a followup telephone call occurred between the settlement officer and petitioner's counsel. Petitioner's counsel agreed to provide information regarding petitioner's real property ownership, among other items, the following week for the settlement officer's consideration. During the phone call, the settlement officer advised petitioner's counsel that the 2007 IRS national and local standard expense allowances became effective October 1, 2007, and that petitioner's life insurance expense of $993 claimed on her Form 433-A would not be allowed because she had an "excessive amount".

On October 5, 2007, the settlement officer reviewed petitioner's credit report that revealed, among other items not pursued by the settlement officer, a "Marriott Ownership" (Florida vacation homes) and a GMAC loan that had not been reported on the submitted Form 433-A. The settlement officer left a voice message for petitioner's counsel on October 5, 2007, requesting information regarding these items.

On October 16, 2007, the settlement officer left a voice message for petitioner's counsel informing him that the case would be closing because the requested information had not been received the prior week. On October 17, 2007, petitioner's counsel left a voice message for the settlement officer

requesting an extension until October 19, 2007, to supply the information. That same day, the settlement officer left a voice message for petitioner's counsel after hearing his message and stated that she had closed the case and would be sustaining the IRS's proposed collection action.

In a letter dated October 18, 2007, and hand-delivered to the Appeals Office the following day, petitioner's counsel represented that under the divorce decree, petitioner was to receive a West Palm Beach, Florida, timeshare property and her former husband was to receive a Daytona Beach, Florida, timeshare property. Petitioner's counsel asserted that the transfers had not been made because petitioner had been sued by her former husband for reimbursement of his tax liabilities. Further, in the letter he asserted that there were outstanding assessments on the Florida properties that neither petitioner nor her former husband could pay. The following documents were enclosed with the letter for the settlement officer's review: (1) Complete recorded divorce decree; (2) an unsigned copy of the quitclaim deed conveying Public Square property to petitioner's former husband; and (3) a copy of the retail buyers' order for a Chevrolet car.

The final decree of divorce stated that petitioner's former spouse "shall receive the realty known as 128 Public Square and the Dayton [sic] Beach Condominium time share" and that

petitioner would receive the "West Palm Beach time share", among other real properties listed. Additionally, the decree stated that the "Court hereby orders the Parties to execute quitclaim deeds herewith conveying their interest in said realty."

The submitted retail buyers' order for a Chevrolet Malibu, dated May 15, 2004, noted the use of GMAC financing and listed petitioner as purchaser with a copurchaser. Petitioner's handwritten note accompanying the document stated that she cosigned for the vehicle, but does not make the payments. In the letter dated October 18, 2007, from petitioner's counsel, he noted that the copurchaser was the daughter of petitioner's former husband.

The settlement officer reviewed the documents accompanying petitioner's counsel's letter dated October 18, 2007, and concluded that (1) the quitclaim deed for the Public Square property provided was unsigned, so a question remained regarding petitioner's ownership of this property; (2) no information on the value of or liens on the Florida timeshare properties was provided; and (3) insufficient information was provided about the Chevrolet Malibu. The settlement officer concluded that the "financial information provided is still not complete therefore the determination to sustain the proposed levy action stands."

The Appeals Office sent petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330

dated October 24, 2007, sustaining the levy for the years at issue.  An attachment to the notice of determination explained:

>     Additional information was received and reviewed on 10/19/2007 but was still incomplete.  Insufficient information was provided to determine Mrs. Maselli's interest and/or equity in the Florida vacation properties, the Chevrolet car and the property on Public Square in Clarksville, Tennessee.
>     Since the financial information submitted is incomplete Appeals cannot make an accurate collection determination.  No consideration can be given to taxpayer's offer of an installment agreement or to any other collection resolution.
>           *     *     *     *     *     *     *
>     I balanced the competing interests in finding the proposed levy appropriate.  You offered to resolve your debt via a monthly installment agreement but failed to provide full financial information for consideration of this or any other collection alternative.  Therefore the proposed levy balances the need for efficient collection with your concern that any collection action be no more intrusive than necessary.

## Discussion

At a section 6330 hearing a taxpayer may raise any relevant issue relating to the collection action, including challenges to the appropriateness of the collection actions and possible collection alternatives.  Sec. 6330(c)(2)(A).  Section 6159(a) gives the Secretary discretionary authority to enter into installment agreements as a collection alternative to satisfy tax liabilities when it is determined that this will facilitate full or partial collection.  Eligibility for an installment agreement is based on the taxpayer's current financial condition.  See generally Internal Revenue Manual (IRM) pt. 5.14.1.5 (July 12, 2005).  Generally, there is no abuse of discretion when an

Appeals Office employee relies on guidelines published in the IRM to evaluate a proposed installment agreement. See, e.g., Orum v. Commissioner, 123 T.C. 1, 13 (2004), affd. 412 F.3d 819 (7th Cir. 2005); Etkin v. Commissioner, T.C. Memo. 2005-245.

Following the hearing, the Appeals officer must determine whether the collection action should proceed. The Appeals officer must consider: (1) Whether the requirements of applicable law and administrative procedure have been met, (2) any issues the taxpayer raised, and (3) whether the collection action balances the need for efficient collection of taxes with the taxpayer's legitimate concern that any collection action be no more intrusive than necessary. Sec. 6330(c)(3).

Because petitioner does not dispute the underlying tax liabilities, we review the Appeals Office's determination sustaining the collection action for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000). An abuse of discretion occurs when the Appeals officer's determination was arbitrary, capricious, or without sound basis in fact or law. Murphy v. Commissioner, 125 T.C. 301, 308 (2005), affd. 469 F.3d 27 (1st Cir. 2006).

Petitioner argues that the Appeals Office's settlement officer abused her discretion by rejecting petitioner's installment agreement proposal and making a determination without considering all information that petitioner supplied. Respondent

asserts that the settlement officer did not abuse her discretion because petitioner did not produce all of the required financial information. The settlement officer determined that petitioner provided insufficient information regarding petitioner's interest and/or equity in the Florida vacation properties, the Chevrolet car, and the property on Public Square in Clarksville, Tennessee. Accordingly, the settlement officer rejected petitioner's proposed collection alternative.

Section 6330 requires the Appeals conferee to consider information the taxpayer presented. The administrative record shows that the settlement officer reviewed petitioner's information regarding the proposed installment agreement, including the supplemental information enclosed with the letter dated October 18, 2007, from petitioner's counsel. Accordingly, the settlement officer denied petitioner's installment agreement proposal because she could not make an accurate determination regarding petitioner's equity in assets and corresponding ability to make a one-time payment to fully or partially satisfy balance due accounts. See generally IRM pt. 5.14.1.5. We conclude that because the settlement officer duly considered all the information that petitioner submitted, she did not abuse her discretion in this regard.

Petitioner further argues that the settlement officer abused her discretion by not providing petitioner with a reasonable

opportunity to supply requested information.  As we stated in Roman v. Commissioner, T.C. Memo. 2004-20,

> No statutory or regulatory provision requires that taxpayers be afforded an unlimited opportunity to supplement the administrative record.  * * * The statute only requires that a taxpayer be given a reasonable chance to be heard prior to the issuance of a notice of determination. * * *

Further, the Appeals Office shall "attempt to conduct a CDP hearing and issue a Notice of Determination as expeditiously as possible under the circumstances."  Sec. 301.6330-1(e)(3), Q&A-E9, Proced. & Admin. Regs.; see Murphy v. Commissioner, supra at 322 (citing Clawson v. Commissioner, T.C. Memo. 2004-106); see also Williams v. Commissioner, T.C. Memo. 2009-159.

Petitioner's counsel asked for an extension of the original deadline to October 19, 2007, to supply additional information that the settlement officer requested.  The settlement officer received and considered all information that petitioner supplied, including the additional information submitted on October 19, 2007.  We conclude that the settlement officer did not abuse her discretion because she is not required to afford an unlimited opportunity to supplement the administrative record.  Any such requirement would unduly prolong proceedings and would be a tool of those intending delay.

In sum, nothing in the record justifies a conclusion that the settlement officer abused her discretion, and petitioner has not shown that the Appeals Office's determination to proceed with

collection for petitioner's unpaid tax liabilities for 2003, 2004, and 2005 was arbitrary, capricious, or without sound basis in fact or law.

In reaching our decision, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.