# United States Tax Court

T.C. Memo. 2023-48

RONALD POWELL AND CYNTHIA POWELL,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 5848-22L.                                  Filed April 17, 2023.

————

Ronald Powell and Cynthia Powell, pro sese.

*Rachel L. Rollins*, for respondent.

## MEMORANDUM OPINION

LAUBER, *Judge*: In this collection due process (CDP) case, petitioners seek review pursuant to section 6330(d)(1)[1] of the determination by the Internal Revenue Service (IRS or respondent) to uphold a notice of intent to levy. Respondent has filed a Motion for Summary Judgment contending that there are no disputed issues of material fact and that the settlement officer (SO) did not abuse her discretion in sustaining the collection action. We agree and accordingly will grant the Motion.

### Background

The following facts are based upon the parties' pleadings and the Declarations and Exhibits attached to respondent's Motion, which include the administrative record of the CDP hearing. *See* Rule

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*2] 121(c). Petitioners resided in Maryland when the Petition was timely filed.

Petitioners did not file a timely return for 2016, and the IRS prepared a substitute for return as authorized by section 6020(b). On the basis of third-party reporting, the IRS determined that petitioners during that year had received gross income of $163,057 and taxable income of $112,107. Petitioners later filed a delinquent return for 2016 but failed to pay the tax shown as due on that return. The IRS assessed the tax as shown on the delinquent return along with additions to tax under section 6651(a) (failure to timely file and pay) and section 6654 (failure to pay estimated tax), plus accrued interest. The IRS has also made assessments on account of petitioners' unpaid tax liabilities for 2017–2019.

In April 2020, in an effort to collect petitioners' 2016 liability, the IRS sent them a Notice of Intent to Seize Your Assets and Notice of Your Right to a Hearing. Petitioners timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing. They expressed interest in a collection alternative, checking the box "Installment Agreement." They did not indicate any intention to dispute their underlying liability for 2016.

The case was assigned to an SO from the IRS Independent Office of Appeals. The SO reviewed petitioners' file and verified that all requirements of applicable law and administrative procedure had been satisfied. The SO calculated that, as of May 2021, petitioners' liability for all open years totaled $30,491, making them eligible for a "streamlined" installment agreement (IA). This procedure enables the IRS to enter into an IA with a taxpayer "without securing in-depth financial information for the sake of expediency." *Internal Revenue Manual* (IRM) 5.14.5.1.1 (Oct. 14, 2021). Such agreements are limited to taxpayers with unpaid assessed balances not exceeding $50,000. *See* IRM 5.14.5.2(1) (Oct. 14, 2021).

The SO sent petitioners a letter acknowledging receipt of their hearing request and scheduling a telephone conference for July 22, 2021. The letter offered petitioners a streamlined IA whereby they would fully discharge their unpaid liabilities for 2016–2019 over 92 months at a rate of $424 per month. The SO explained that, if petitioners wished to move forward with the streamlined IA, they should complete and return Form 433–D, Installment Agreement, by June 9, 2021. Alternatively, if petitioners believed they could not afford $424 per month, the letter

**[\*3]** requested that they complete and return Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, accompanied by the requisite financial information.

The SO received no response to her offer by the June 9 deadline and no other communication from petitioners until the day before the scheduled conference. On July 21, 2021, petitioner wife called the SO to request that the conference be rescheduled; the SO agreed and rescheduled it for October 5, 2021. The SO reiterated that she could not consider a monthly payment lower than $424 unless petitioners submitted a completed Form 433–A with supporting financial information. During the 10 weeks before the rescheduled conference, petitioners did not communicate their intentions regarding the streamlined IA proposal and did not submit a Form 433–A.

On October 5, 2021, the SO contacted petitioners' newly designated representative for the telephone conference. The representative raised no challenge to petitioners' underlying tax liability during that call or at any other time during the CDP proceeding. The SO gave petitioners a deadline of October 19, 2021, to accept the streamlined IA or (alternatively) submit a completed Form 433–A in support of a different collection alternative.

On October 19, 2021, petitioners submitted Form 433–A without any supporting documentation. Netting petitioners' monthly expenses against their monthly income, the Form 433–A showed a "net difference" of $1,449 per month available to pay their outstanding tax liabilities—significantly more than the $424 payment required under the SO's streamlined IA proposal. The SO determined that certain of petitioners' reported expenses (e.g., for their home mortgage and two cars) significantly exceeded the expenses allowable under the applicable local and national standards. Making the adjustments required by those standards, the SO determined that petitioners could actually afford payments of $7,590 per month.

On November 3, 2021, the SO received copies of petitioners' car loans, insurance policies, and mortgage statements, but she determined that these documents were insufficient to support a deviation from local and national expense standards. Two days later the SO called petitioners' representative and presented three options from which petitioners might choose: (1) pay their 2016 tax liability in full; (2) submit an offer-in-compromise; or (3) accept a revised IA covering 2016–2019 that would require 109 payments of $350 per month. Petitioners' representative

**[\*4]** was instructed to inform the SO of their decision by November 12, 2021. Having received no response by that deadline or subsequently, the SO on November 24, 2021, decided to close the case.

On February 1, 2022, the IRS sent petitioners a notice of determination sustaining the proposed levy. Petitioners timely petitioned this Court on March 2, 2022, contending that the expenses the SO used to determine the monthly payment were "not computed correctly." On October 19, 2022, respondent filed a Motion for Summary Judgment, to which we directed petitioners to respond by November 21, 2022. Our Order warned petitioners that "under Tax Court Rule 121(d), judgment may be entered against a party who fails to respond" to a motion for summary judgment. Petitioners did not respond to the Motion by the deadline we set or subsequently.

## *Discussion*

### I.    *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Where the moving party properly makes and supports a motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials of his pleadings but instead must set forth specific facts showing a genuine dispute for trial. Rule 121(d); *see Sundstrand Corp.*, 98 T.C. at 520.

Because petitioners did not respond to the Motion for Summary Judgment, we could enter a decision against them for that reason alone. *See* Rule 121(d). We will nevertheless consider the Motion on its merits. We conclude that no material facts are in genuine dispute and that this case is appropriate for summary adjudication.

### II.    *Standard of Review*

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our precedents. Where the taxpayer's underlying tax liability is properly at issue, we review the IRS's determination de novo. *Sego v.*

[*5] *Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). Where the taxpayer's underlying liability is not properly in dispute, we review the IRS decision for abuse of discretion only. *Jones v. Commissioner*, 338 F.3d 463, 466 (5th Cir. 2003); *Goza*, 114 T.C. at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).

Taxpayers may challenge their underlying tax liability at a CDP hearing only if they did not receive a statutory notice of deficiency for that liability or did not otherwise have an opportunity to dispute it. § 6330(c)(2)(B). And taxpayers are precluded from advancing an underlying liability challenge in this Court "if it was not properly raised in the CDP hearing." *Thompson v. Commissioner*, 140 T.C. 173, 178 (2013); *see Giamelli v. Commissioner*, 129 T.C. 107, 114 (2007). Because petitioners did not raise a challenge to their 2016 tax liability at the CDP hearing, we review the SO's actions for abuse of discretion only. *See* § 6330(c)(2)(B); *Goza*, 114 T.C. at 182.

III.   *Abuse of Discretion*

In deciding whether the SO abused her discretion in sustaining the proposed levy, we consider whether she (1) properly verified that the requirements of applicable law or administrative procedure were met, (2) considered relevant issues petitioners raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [petitioners] that any collection action be no more intrusive than necessary." *See* § 6330(c)(3). Our review of the record establishes that the SO properly discharged all of her responsibilities under these provisions.

Petitioners' CDP hearing request indicated that they intended to seek a collection alternative in the form of an IA. Section 6159(a) authorizes the IRS to enter into a written agreement allowing a taxpayer to pay a tax liability in installments if it concludes that the agreement "will facilitate full or partial collection of such liability." The decision to accept or reject an IA lies within the Commissioner's discretion. *See Thompson*, 140 T.C. at 179. As a threshold matter, it is not an abuse of discretion for an SO to decline to consider a collection alternative where the taxpayer does not put an offer on the table. *See McLaine v. Commissioner*, 138 T.C. 228, 243 (2012); *Kendricks v. Commissioner*, 124 T.C. 69, 79 (2005). In other words, it is the obligation of the taxpayer, not the

**[\*6]** reviewing officer, to start negotiations by making a specific proposal. Petitioners never made one.

Though not required to do so, the SO proposed two IAs to petitioners. The streamlined IA, offered in May 2021, would have enabled them to discharge their 2016–2019 tax liabilities by making 92 payments of $424 a month—an amount their own Form 433–A showed they could easily afford. The revised IA, which the SO proposed in November 2021, would have enabled them to discharge those same liabilities by making 109 payments of $350 a month. Petitioners did not respond to either offer, did not make a counteroffer, and did not contend that either monthly payment was unreasonable.

When an SO gives the taxpayer an adequate period to respond, it is not an abuse of discretion for the SO to move forward with a determination after receiving no communication from the taxpayer. *See Maselli v. Commissioner*, T.C. Memo. 2010-19, 99 T.C.M. (CCH) 1089, 1092 (citing *Roman v. Commissioner*, T.C. Memo. 2004-20); *cf. Pough v. Commissioner*, 135 T.C. 344, 351 (2010) (citing *Shanley v. Commissioner*, T.C. Memo. 2009-17). The SO gave petitioners a deadline of November 12, 2021, to accept the revised IA, propose an offer-in-compromise, or pay their balance in full. The SO waited two weeks after that deadline before determining to sustain the proposed levy and another three months before issuing the notice of determination. The SO did not abuse her discretion by issuing that notice when she did. *See Hartmann v. Commissioner*, T.C. Memo. 2018-154, 116 T.C.M. (CCH) 301, 304 ("[A]n SO is not required to negotiate indefinitely or wait any specific time before issuing a determination."), *aff'd*, 785 F. App'x 906 (3d Cir. 2019).

In their Petition, petitioners contended that their monthly expenses were "not computed correctly" when the SO calculated their ability to pay. In reviewing for abuse of discretion, we do not recalculate a taxpayer's ability to pay or substitute our judgment for the SO's. *See O'Donnell v. Commissioner*, T.C. Memo. 2013-247, 106 T.C.M. (CCH) 477, 481. The SO determined petitioners' monthly income and expenses on the basis of their disclosures on the Form 433–A, adjusting certain reported expenses downward to conform to applicable local and national standards. Although petitioners appear to challenge those downward adjustments, we have repeatedly held that an SO does not abuse her discretion by adhering to such standards, even if doing so would force a taxpayer to change his or her lifestyle. *See Friedman v. Commissioner*, T.C. Memo. 2013-44, 105 T.C.M. (CCH) 1288, 1290; *cf. Aldridge v. Commissioner*, T.C. Memo. 2009-276, 98 T.C.M. (CCH) 523, 526–27.

**[\*7]**   Petitioners assert that they sent the SO additional financial information, which allegedly would have supported a deviation from national and local standards, and they speculate that these documents were lost in the mail.  Petitioners do not claim that they sent the documents by certified or registered mail, and they have supplied no affidavit or exhibit supporting their allegation.  The taxpayer generally bears the risk of nondelivery when a tax return or other document is not sent by registered or certified mail.  *See Walden v. Commissioner*, 90 T.C. 947, 951 (1988).  Petitioners' unsupported allegation that they mailed this information is insufficient to create a genuine dispute of material fact.  *See* Rule 121(d); *Powers v. Commissioner*, T.C. Memo. 2015-210, 110 T.C.M. (CCH) 422, 424.

In any event, petitioners' challenge to the SO's expense adjustments is beside the point.  The unadjusted figures shown on their Form 433–A disclosed monthly income net of expenses of $1,449—three times the monthly payment required under the streamlined IA and four times the monthly payment required under the revised IA.  The SO offered petitioners two IAs that reasonably balanced the need for efficient collection of taxes with their legitimate concern that the collection action be no more intrusive than necessary.  Petitioners failed to respond to these offers, made no effort to show that the monthly payments proposed were unreasonable, and never made a counteroffer.  Finding no abuse of discretion in any respect, we will grant summary judgment for respondent.

To reflect the foregoing,

*An appropriate order and decision will be entered.*