T.C. Memo. 2013-232

UNITED STATES TAX COURT

J & S AUTO PAINTING, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23029-11L.                    Filed October 21, 2013.

Mark Frederick Werblood, for petitioner.

James G. Hartford, for respondent.

MEMORANDUM OPINION

DAWSON, Judge:  This case is before the Court on a petition for review of

a Notice of Determination Concerning Collection Action(s) Under Section 6320

and or 6330,[1] dated August 26, 2011, to proceed with the levy on petitioner's

_____

[1]Unless otherwise indicated, all subsequent section references are to the

(continued...)

**[*2]** property to collect petitioner's unpaid Federal employment tax liabilities (notice of determination). The issues for decision are: (1) whether the settlement officer abused her discretion by rejecting petitioner's proposal to pay $400 per month under an installment agreement as a collection alternative; and (2) whether the settlement officer abused her discretion by not holding a face-to-face collection due process hearing (CDP hearing) with petitioner.

## Background

This case was submitted fully stipulated under Rule 122, and the stipulated facts are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

Petitioner is a family-owned corporation operating an automobile painting franchise. At the time the petition was filed, petitioner's principal place of business was in Falls Church, Virginia. At all relevant times, petitioner was required to make biweekly deposits of Federal employment taxes.

---

[1](...continued)
Internal Revenue Code as amended and in effect at all relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure.

[*3]  Petitioner filed its Forms 941, Employer's Quarterly Federal Tax Return, reporting the following employment taxes owed for the quarters and years at issue:

| Form | Quarter ending | Reported employment tax owed |
|------|----------------|------------------------------|
| 941 | 3/31/08 | $16,237.94 |
| 941 | 6/30/08 | 17,085.52 |
| 941 | 9/30/08 | 16,825.96 |
| 941 | 12/31/08 | 13,040.36 |
| 941 | 3/31/09 | 14,101.08 |
| 941 | 6/30/09 | 12,636.26 |
| 941 | 9/30/09 | 14,726.00 |

On January 4, 2010, respondent assessed the employment tax liabilities petitioner reported on its Forms 941, late payment additions to tax, failure to deposit penalties, and interest for each of the taxable quarters at issue.  On February 8, 2010, respondent assessed additional Federal tax deposit penalties as follows:

| Quarter ending | Additional penalties |
|----------------|----------------------|
| 3/31/08 | $811.90 |
| 6/30/08 | 854.27 |
| 9/30/08 | 841.30 |
| 12/31/08 | 652.02 |
| 3/31/09 | 705.05 |
| 6/30/09 | 631.81 |
| 9/30/09 | 736.30 |

Respondent sent petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing (final notice) on July 26, 2010, reflecting petitioner's

[*4] unpaid employment tax liabilities, including assessed penalties and interest, as follows:[2]

| Taxable periods | Total liability |
|---|---|
| Mar. 31, 2008 | $27,420.51 |
| June 30, 2008 | 28,259.89 |
| Sept. 30, 2008 | 27,270.52 |
| Dec. 31, 2008 | 20,689.96 |
| Mar. 31, 2009 | 21,947.64 |
| June 30, 2009 | 18,716.02 |
| Sept. 30, 2009 | 19,348.44 |
| Total | 163,652.98 |

On August 25, 2010, petitioner timely filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing, requesting a CDP hearing and consideration of a collection alternative.

By letter dated December 11, 2010, respondent acknowledged receipt of petitioner's CDP hearing request. On January 18, 2011, respondent informed petitioner that its CDP hearing request had been assigned to Settlement Officer E.J. Frazier (SO Frazier) in the Internal Revenue Service's (IRS) Memphis, Tennessee, Appeals Office. SO Frazier had not had any prior involvement with petitioner either in Appeals or in any other IRS function for the employment tax

---

[2]When the final notice was issued on July 26, 2010, petitioner had unpaid employment taxes for each of the taxable quarters at issue and no bankruptcy proceeding was pending.

[*5] and tax years at issue. On March 1, 2011, SO Frazier sent petitioner a letter, stating: (1) she had received petitioner's Form 12153, (2) she had scheduled a telephone hearing for March 29, 2011, and (3) petitioner had to be in compliance with its Federal tax filing obligations in order to qualify for a collection alternative. As of March 1, 2011, petitioner had not filed Forms 941 for tax quarters ended September 30 and December 30, 2010, or a Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, for the taxable year ended December 31, 2010. SO Frazier requested that petitioner submit the following by March 15, 2011: (1) the delinquent Forms 941 and 940, (2) a Form 433-B, Collection Information Statement for Businesses, with the required supporting documentation, and (3) a Form 656, Offer in Compromise, with a $150 nonrefundable application fee.

By facsimile (fax) dated March 15, 2011, petitioner's counsel requested a face-to-face CDP hearing and requested that the scheduled March 29, 2011, hearing be postponed to a later date because he was ordered to be in Court the same day. On March 25, 2011, petitioner's counsel faxed to SO Frazier the following documents: (1) petitioner's Forms 941 for the quarters ended June 30, September 30, and December 31, 2010, (2) petitioner's Form 1120, U.S. Corporation Income Tax Return, for the tax year ending December 31, 2009, (3) a

[*6] completed Form 433-B,[3] and (4) some of petitioner's records for its Wachovia business checking account and its Capital One general ledger and loan accounts.

The Wachovia records included only the first pages of the statements--page 1 of the 12-page December 2010 statement, page 1 of the 14-page January 2011 statement, and page 1 of the 15-page February 2011 statement. The Wachovia records show the following account summaries for those periods:

|  | Dec. 2010 | Jan. 2011 | Feb. 2011 |
|---|---|---|---|
| Opening balance | $4,991.66 | $2,755.26 | $16,917.62 |
| Deposits and credits | 41,255.64 | 50,311.06 | 38,663.21 |
| Checks | (40,143.43) | (31,390.86) | (38,959.00) |
| Automated checks | -0- | (46.99) | -0- |
| Other withdrawals/fees | (3,348.61) | (4,710.85) | (2,976.61) |
| Closing balance | 2,755.26 | 16,917.62 | 13,645.22 |

The Wachovia records showed only the account summaries, a few of the deposits and credits, and none of the checks or other withdrawals or fees for the account for those periods.

---

[3]Although the parties have stipulated that "on July 11, 2011, petitioner submitted a Form 433-B and supporting documents to Ms. Munson" and that "on August 1, 2011, petitioner's counsel faxed a Form 433-B", these documents are not in the record before us. We base our analysis only on the record before this Court. There is no indication that the figures in the "other" Forms 433-B are different from those in the Form 433-B in the record.

[*7] The Capital One general ledger account records are the complete statements for December 2010, January 2011, and February 2011 and show the following account summaries:

|  | Dec. 2010 | Jan. 2011 | Feb. 2011 |
|---|---|---|---|
| Opening balance | ($2,088.20) | ($2,040.18) | $78.68 |
| Deposits and credits | 4,387.87 | 7,357.78 | 48,027.42 |
| Checks and debits | (4,339.85) | (5,288.96) | (48,034.21) |
| Service charge | -0- | -0- | -0- |
| Ending balance | (2,040.18) | 28.64 | 71.87 |

The Capital One February 2011 statement shows, inter alia, customer deposits of $15,500 and $20,000, respectively, made on February 10 and 15 and two withdrawals each for $15,500 made on February 14 (designated as "ACH Withdrawal CHASE EPAY * * * MURTAGH, COLM") and 16 (designated "Customer withdrawal").

Petitioner stated claimed monthly income of $51,188 and monthly expenses of $52,461.45 on the Form 433-B but stated on the form that the "Business has steadily increased sales over the past 3 years" and that it expected its income to increase by more than $70,000.

On March 29, 2011, respondent transferred petitioner's CDP hearing to the Richmond, Virginia, Appeals Office and assigned the matter to Settlement Officer Ahn Munson (SO Munson), who had had no prior involvement with petitioner in

**[*8]** Appeals or any other IRS function for the employment taxes or tax years involved in this case.

SO Munson reviewed the case file and determined that petitioner was not current with its required Federal employment tax deposits. In an April 26, 2011, telephone call, SO Munson informed petitioner's counsel that for that reason, petitioner did not qualify for a face-to-face CDP hearing.[4] Petitioner's counsel stated that petitioner had reduced its labor force and was in the process of obtaining a loan to fund an offer-in-compromise. SO Munson requested that petitioner provide by May 2, 2011, proof that it had filed Form 941 for the taxable quarter ended March 31, 2011, and proof of payment of the required Federal employment tax deposits. SO Munson stated that she would sustain the levy if petitioner did not comply. Petitioner's counsel agreed to provide the requested information but as of May 9, 2011, had not done so.

On May 16, 2011, petitioner's counsel provided SO Munson with (1) proof that petitioner had filed for an extension of time for filing the 2010 Form 1120, (2) a copy of the Form 941 for the taxable quarter ended March 31, 2011, and (3) proof that petitioner paid the taxes shown on the March 31, 2011, Form 941 on

[4]The parties stipulated that as of April 26, 2011, petitioner did not qualify for a face-to-face CDP hearing because it was not current with its Federal employment tax deposits.

**[*9]** May 2, 2011. He also left SO Munson a voice mail message stating that he had to travel out of town for a family emergency but that he believed petitioner to be in full compliance.

SO Munson agreed to schedule a CDP hearing in the IRS' Richmond, Virginia, Appeals Office for June 29, 2011, provided petitioner submitted at the hearing proof of full compliance with filing and payment requirements.

On June 24, 2011, petitioner's counsel called and informed SO Munson that he would be unable to attend the June 29, 2011, CDP hearing. His father had passed away that morning, and he had to go to Florida to coordinate funeral arrangements and then travel to New York for his father's burial. SO Munson, in response, offered petitioner's counsel a telephone hearing as an alternative, but petitioner's counsel stated that he preferred a face-to-face hearing. SO Munson agreed to reschedule the face-to-face hearing to July 13, 2011, but informed petitioner's counsel that, having given petitioner many extensions and opportunities to comply and become current with its tax obligations, if it did not provide proof of compliance and submit a collection alternative by July 11, 2011, she would sustain the levy.

On July 11, 2011, SO Munson called petitioner's counsel and left a voice mail message informing him that her office was in the process of moving and that

[*10] she had to reschedule the July 13, 2011, face-to-face hearing to August 2, 2011. SO Munson provided petitioner's counsel with the new Appeals Office address.

On August 2, 2011, SO Munson called petitioner's counsel and left him a voice mail message, informing him that the August 2, 2011, face-to-face hearing would be canceled because petitioner had not provided the promised collection alternative. The same day, petitioner's counsel returned the call, informing SO Munson that he would be submitting the requested Form 433-D, Installment Agreement, and an updated collection information statement. SO Munson granted petitioner's counsel a further extension until August 5, 2011, to do so. SO Munson reminded petitioner's counsel that if he did not comply, she would sustain the levy.

On August 5, 2011, petitioner's counsel faxed a Form 433-D dated August 1, 2011, to SO Munson, offering to pay installments of $400 per month. By letter dated August 5, 2011, SO Munson acknowledged receipt of the offer but informed petitioner it would not be accepted because petitioner's bank statements and Form 433-B showed that petitioner could pay more than $400 monthly. She further stated that, in order for petitioner's tax liability to be fully satisfied within the statutory collection period, petitioner would need to make monthly payments of

[*11] about $5,000.  She advised petitioner's counsel to submit a completed Form

433-D to her by August 15, 2011, if petitioner wanted to offer a new collection

alternative.  SO Munson informed petitioner's counsel that she would close the

case and sustain the levy if she did not receive the updated Form 433-D by August

15, 2011.  As of August 19, 2011, petitioner had not submitted an updated Form

433-D or other collection alternative to SO Munson, and SO Munson closed the

file.  On August 26, 2011, respondent issued the notice of determination,

sustaining the levy.[5]  The notice stated:

> The Appeals Office rejected this proposed * * * [installment
> agreement] since the taxpayer's financial records indicate the
> taxpayer has ability to pay much more than the proposed amount.
> Appeals advised the representative and the taxpayer to increase the
> payment to at least $5,000 per month before it is considered as an
> acceptable collection alternative.  So far the taxpayer has not
> responded to the Appeals Office; therefore, the proposed levy action
> is fully sustained.

## Discussion

Section 6331(a) authorizes the Commissioner to levy upon property and

rights to property of a taxpayer who is liable for taxes and who fails to pay those

---

[5]As of February 14, 2013, petitioner had not made any payment of Federal employment taxes and penalties assessed or interest accrued for the taxable quarters and years at issue.  As of February 15, 2013, petitioner had not filed its Form 941 for the taxable quarter ended September 30, 2012, and was not current with its Federal employment tax deposits for the taxable quarter ended December 31, 2012.

**[*12]** taxes within 10 days after notice and demand for payment is made.  Section 6331(d) provides that the levy authorized in section 6331(a) may be made only if the Commissioner has given notice to the taxpayer no less than 30 days before the day of the levy.

Section 6330(a) grants the taxpayer the right to request a prelevy CDP hearing to be conducted by the IRS Appeals Office.  Sec. 6330(a)(3)(B), (b)(1); see Davis v. Commissioner, 115 T.C. 35, 37 (2000); Goza v. Commissioner, 114 T.C. 176, 179 (2000).  The Appeals Office must verify that the requirements of any applicable law or administrative procedure have been met and consider the issues raised by the taxpayer and whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern that any collection action be no more intrusive than necessary.  Sec. 6330(c)(3); Lunsford v. Commissioner, 117 T.C. 183, 184 (2001).

Pursuant to section 6330(d)(1), this Court may review a determination to sustain a proposed levy made by the Appeals Office.  See Rules 330-334.  Where the underlying tax liability is properly in dispute, we review the determination de novo.  Goza v. Commissioner, 114 T.C. at 181-182.  Petitioner does not challenge either the amounts or the validity of the outstanding employment tax liabilities, additions to tax, penalties, and/or interest for the taxable quarters at issue.  Where,

**[\*13]** as in this case, the underlying tax liability is not at issue, we review the Commissioner's determination for abuse of discretion. Id. at 182; see also Hoyle v. Commissioner, 131 T.C. 197, 200 (2008); Sego v. Commissioner, 114 T.C. 604, 610 (2000). An abuse of discretion occurs if the Appeals Office exercises its discretion "arbitrarily, capriciously, or without sound basis in fact or law." Woodral v. Commissioner, 112 T.C. 19, 23 (1999); see Giamelli v. Commissioner, 129 T.C. 107, 111 (2007).

Petitioner asserts that SO Munson abused her discretion by rejecting petitioner's offer to pay the unpaid employment taxes in monthly installments of $400 and not holding a CDP hearing with petitioner. This Court does not independently review whether a collection alternative is acceptable but rather focuses on whether the settlement officer's rejection of the offer was arbitrary, capricious, or without sound basis in fact or law. Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). The taxpayer bears the burden of proving abuse of discretion. Rules 122(b), 142(a); see also Titsworth v. Commissioner, T.C. Memo. 2012-12, 2012 WL 86670, at \*6 (holding that the taxpayer bears the burden even in cases submitted fully stipulated).

**[*14]** <u>Rejection of Installment Agreement</u>

Section 6159 authorizes the Commissioner to enter into written agreements allowing taxpayers to pay tax in installment payments if he deems that the "agreement will facilitate full or partial collection of such liability." The Commissioner in general has the discretion to accept or reject any proposed installment agreement. <u>See</u> sec. 301.6159-1(c)(1)(i), Proced. & Admin. Regs. This Court has generally held that there is no abuse of discretion when the settlement officer relies on guidelines published in the Internal Revenue Manual (IRM) to evaluate a proposed installment agreement. <u>See, e.g.</u>, <u>Orum v. Commissioner</u>, 123 T.C. 1, 13 (2004), <u>aff'd</u>, 412 F.3d 819 (7th Cir. 2005); <u>Aldridge v. Commissioner</u>, T.C. Memo. 2009-276; <u>Etkin v. Commissioner</u>, T.C. Memo. 2005-245. The IRM guidelines state that the procedures for processing an installment agreement for a business are applicable only if taxpayers can pay operating expenses as well as current and delinquent taxes and are current with their filing and deposit requirements. <u>See</u> IRM pts. 5.14.7.2 (Aug. 5, 2010), 5.14.7.4 (Mar. 11, 2011).

SO Munson rejected petitioner's offer to pay $400 monthly installments because petitioner's bank statements and Form 433-B showed that petitioner could pay monthly installments much greater than $400. SO Munson determined that

**[*15]** petitioner would need to pay monthly installments of approximately $5,000. The Capital One February 2011 statement shows, inter alia, customer deposits of $15,500 and $20,000, respectively, made on February 10 and 15 and two withdrawals each for $15,500 made on February 14 (designated as "ACH Withdrawal CHASE EPAY * * * MURTAGH, COLM") and 16 (designated "Customer withdrawal"). Therefore, it was not unreasonable or arbitrary for SO Munson to conclude that petitioner could pay much more that the $400 monthly payments offered. Additionally, although on the Form 433-B petitioner claimed monthly income of $51,188 and monthly expenses of $52,461.45, it did not reconcile the claimed net loss with the deposits on its bank records. Moreover, petitioner stated on the Form 433-B that sales had steadily increased over the previous three years and that it expected its income to increase by more than $70,000. Finally, SO Munson advised petitioner's counsel to submit a new completed Form 433-D to her by August 15, 2011, if petitioner wanted to offer a new collection alternative. Petitioner did not do so.

Petitioner contends that SO Munson did not provide any further explanation to the August 5, 2011, letter. We note, however, that petitioner did not attempt to contact SO Munson or follow up in any way. Accordingly, after receiving no response from petitioner, SO Munson closed the file and issued a notice of

[*16] determination sustaining the proposed levy. SO Munson's rejection of petitioner's installment agreement offer was not arbitrary or capricious.

Face-to-Face Hearing

Petitioner argues that it was not afforded a face-to-face hearing and that, in fact, a CDP hearing never occurred. We disagree.

A section 6330 CDP or other prelevy hearing is not a formal adjudication, and a face-to-face hearing is not required under section 6330. Katz v. Commissioner, 115 T.C. 329, 337-338 (2000) (finding a combination of telephone calls and one or more written communications between a taxpayer and a settlement officer is sufficient to constitute a hearing); Radeke v. Commissioner, T.C. Memo. 2012-319, at *9 ("An informal telephone conference which gives the taxpayer the opportunity to discuss the merits of her case, settlement alternatives, and other issues related to the proposed levy is a proper CDP hearing."); Jackson v. Commissioner, T.C. Memo. 2010-180, 2010 WL 3119253, at *2 (and cases cited therein); Williamson v. Commissioner, T.C. Memo. 2009-188; see sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs.

SO Munson and petitioner's counsel communicated through letters, faxes, and telephone conversations. These communications constituted a proper CDP hearing. Petitioner argues that it was unaware that the telephone conversations its

[*17] counsel had with SO Munson constituted a CDP hearing. This argument lacks merit because SO Munson repeatedly cautioned petitioner's counsel that there would not be a face-to-face hearing if certain forms, returns, or records were not provided or if petitioner did not bring its required filings and deposits into compliance. The clear implication was that, if a "face-to-face" hearing was not allowed, the telephone conversations and other communications constituted the hearing. Thus, SO Munson did not abuse her discretion by denying petitioner a face-to-face hearing.

We conclude that petitioner would have needed to offer to pay more than $400 per month to satisfy its outstanding tax liabilities. At no time did petitioner express an indication (or made any revised offer) to do so. In addition, petitioner has failed to establish current compliance and is thus not eligible for a collection alternative.

## Conclusion

SO Munson verified that all requirements of applicable law and administrative procedure had been met and considered the relevant issues petitioner raised. Therefore, on the record presented, we hold that SO Munson did not abuse her discretion by sustaining the proposed levy action to collect petitioner's outstanding employment tax liabilities for 2008 and 2009, and we

**[\*18]** sustain respondent's determination to proceed with the proposed levy. We also hold that SO Munson did not abuse her discretion by not holding a face-to-face CDP hearing with petitioner.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.